1817.

KIMMEL *against* KIMMEL.

*Pittsburg.*

IN ERROR.

September.

A person may testify to his knowledge of the general character for truth of a witness which he has derived from common report.

ERROR to the Court of Common Pleas of *Somerset* county, in which a bill of exceptions was returned.

To impeach the character of *Peter Kimmel*, a subscribing witness to the note on which the suit was brought, *Jonathan Boyd* was called, who testified, " that he had known *Peter* " *Kimmel* for eighteen or twenty years ; that he had lived at " one time within four miles of him ; that he had bought " goods from him, and paid him, and that he had no know- " ledge of his general character but *by report.*" The defendant then proposed to ask the witness the following question, " What is the general reputation of *Peter Kimmel*, in " the county of *Somerset*, as a man of truth ?" This question was objected to on the ground that the witness was incompetent to speak of *Peter Kimmel*'s general character, because he professed to know nothing on the subject of his own knowledge ; all his information having been derived from others ; and that a witness must be able, from what *he himself* knows of a person's character, to state what it is, otherwise his evidence will be secondary and inadmissible. And of this opinion was the Court below, who sustained the objection, and the defendant tendered a bill of exceptions.

3 SR 336
35 SC 563
e 35 SC 568

*Alexander*, for the defendant in error, admitted, that the objection could not be sustained ; but, on account of its frequent occurrence in practice, requested the Court to give their opinion, and the reasons of it agreeably to the act of assembly.

TILGHMAN C. J. was sick and absent:

GIBSON J. Although the very nice and subtle distinction taken below, cannot in this case be sustained, I admit there may be cases where even evidence of character may be excluded, on account of its being hearsay, and not the best of

which the nature of the case is susceptible; as where the
witness may have never been in the neighbourhood in which
the person, whose character is to be affected, resides, and
where the former may, in truth, have no other knowledge of
the actual state of the reputation or common report of such
neighbourhood than what he has gleaned from a single indi-
vidual. The witness shall not be permitted to say *he was
told* that the person had either a good or bad character in
his own neighbourhood. But that is a very different thing
from a knowledge of common report acquired, as in this
case, from common report itself. That knowledge of cha-
racter which is gained from report, cannot be considered as
secondary; for report *constitutes* character, and is, itself, the
very thing of which the witness is called to speak. A com-
petent knowledge of the subject can, indeed, be acquired
through no other medium, for particular instances of want of
veracity, or private belief of destitution of moral principle,
arising from particular instances of misconduct, are always
excluded. A personal acquaintance with the individual to
be affected, is unnecessary; but it will be enough if the wit-
ness be acquainted with his character; which is a term con-
vertible with common report. The witness is to give not
his own judgment of the matter, but the aggregate result of
at least a majority of the voices he has heard; or in other
words, (for after all there is, perhaps, no more plain or prac-
tical exposition of the matter,) he must state what the com-
mon report is among those who have the best opportunity of
judging of the habits and integrity of the person whose cha-
racter is under consideration. There is danger from the
proneness, so often observable in witnesses to substitute their
own opinion for that of the public, whose judgment cannot
be so readily warped by prejudice or feeling as that of an
individual; and hence the policy of not requiring any inti-
mate degree of knowledge respecting the person himself, or
of bringing the witness too close to the scene. The reputa-
tion of the neighbourhood is the only thing that is compe-
tent; and if the witness has acquired a knowledge of it by
the report of the neighbourhood, he is exactly qualified to
be heard.

DUNCAN J. The bill of exceptions presents this case for
the consideration of the Court. *Peter Kimmel* had been ex-

amined as a witness on behalf of *George Kimmel*, the defend⸗ ant in error. In order to affect his credibility, one *Jonathan Boyd* was on examination, on the part of the plaintiff in error, who swore as follows: " I have known *Peter Kimmel* for " eighteeen or twenty years. I lived at one time within four " miles of him. I have bought goods from him, and paid " him. I have no knowledge of his general character except " from report."

This question was then offered to be put to the witness on the part of the plaintiff in error. " What is the general re- " putation of *Peter Kimmel*, in the county of *Somerset*, as a " man of truth ?" The Court, on objection to this question by the defendant in error, sustained the exception, and over- ruled the testimony. This is a question of importance ; not from any difficulty in its solution, but because it is one of daily occurrence in the trial of causes. The adherence to rules of evidence is said to be one of the first duties of a Judge. They are fixed and certain, as *rules* of property, not arbitrary or discretionary. Facts are to be proved by posi- tive testimony, or by circumstances from which a jury may fairly deduce them. Character by reputation. Character and reputation are the same. The reputation which a man has in society is his character. Where, in judicial proceed- ings, character is made a part of the inquiry, it never can be proved by the proof of particular facts. A man who is call- ed on to give testimony, is always subjected to the investiga- tion of his general character. This the law supposes he is ever prepared to defend. But miserable, indeed, would be the situation of a witness, if every transaction of his life was open to inquiry. No man could be prepared to repel every possible charge, that might be made against him, or refute the imputation of every crime, that any man might be dis- posed to make. He is not on his trial. His general character is the test, by which his credit is to be adjudged. A witness called on to impeach the credit of another, is never permit- ted to speak of his knowledge of particular facts from which he draws an opinion of the witness examined. All who are conversant in courts of justice must have observed the reluc- tance with which witnesses testify with regard to the charac- ter of other witnesses. Men of the strictest veracity, and acting under the strongest impressions of the sacred obliga- tion of an oath, to testify the whole truth, too frequently en-

deavour to evade a direct answer. How often do they, in the first instance, state, I know nothing of my own knowledge but from report? How often does the inquiry end in the very question put to this witness,—" What is the general re- "putation of the witness examined, as to truth, in the county "in which he lives?" If a witness was not permitted to state the general reputation, there must be an end of all inquiry into character. Particular facts cannot be given in evidence. Opinion will not be evidence; for if it were, no witness would be safe from the shafts of calumny. No man is to be discredited by the mere opinion of another; few men live whom some do not think ill of. But it is said, the witness must speak of his own knowledge. So he must. But what is this knowledge? Not a personal, individual knowledge of facts. He knows, by reputation, what is the character of the man. Again, it is said, that in this case, the person called to impeach the character of the witness examined, said he had his knowledge of him but from report. General report is general reputation. General reputation is general charac- ter. But the witness had known the man from eighteen to twenty years; lived at one time within four miles of him; had dealings; testified his opportunities of having acquired a knowledge of his general character, by a long acquaintance with him. None so proper, then, to bear testimony as to his character. No question could be put, the answer to which would so clearly establish his character, his reputation for truth, or otherwise, as the one which the Court decided could not be put. This Court would, in a case which they consider so clear, have, without any observations, directed the reversal of the judgment; but as the counsel for the de- fendant in error, not from any doubts in his own mind, but from a desire that the opinion of the Court, and the reasons of the opinion, should be given, to prevent misapprehension on a subject which so frequently must occur, has requested the Court to give not only the opinion, but the reasons of it, ac- cording to the provisions of the law. This is *now done.*

The judgment must be reversed, and a *venire facias de novo* awarded.

> Judgment reversed, and a *venire facias de novo* awarded.