## Braddee *against* Brownfield.

A party can not give evidence to confirm the good character of a witness, unless his general character had been previously impugned by the other party.

ERROR to a special court of *Fayette* county.

John F. Braddee against Basil Brownfield. This was an issue directed to try the fact whether the plaintiff had made a payment of 1630 dollars to the defendant on account of certain judgments:

Wm Swearingen, Jun., affirmed.—On the 4th of April 1838, Mr Brownfield came to my house, and I paid him 1630 dollars for John F. Braddee. Mr Brownfield wrote a *receipt and gave it to* me. I witnessed the receipt. This is the receipt. I got the money from Dr Braddee, and at his request paid it to Mr Brownfield. He wrote the receipt and signed it in my presence.

"Reseaved of Dr John F. Braddee, by the hands of Wm. Swearingen jr., the sum of sixteen hundred and thirty dollars, to be credited on sertain judgments in the common pleas of Fayette county which I hold against him viz no 47—48—40—50 of June term 1834 as witness my hand and seal this the fourth day of Aprile 1838.

"BASIL BROWNFIELD."

"Test William Swearingen jr."

The defendant then called a number of witnesses to prove facts tending to show that the money was not paid, and that the testimony of Wm. Swearingen, Jun., was not true.

The plaintiff then offered to prove that the general character of Wm Swearingen was good. To this evidence the defendant objected, because they had given no evidence against his personal character.

PER CURIAM.—Your whole defence rests on showing the witness to be perjured; I have never known such testimony refused, where the imputation of perjury is cast upon the witness. Let the testimony be heard; defendant's counsel except and court seal this bill.

*Howell*, for plaintiff in error, cited 19 *Wend.* 570–595, and 8 *Pick.* 154.

*Austin, contra*, cited *Swift's Ev.* 144; 15 *Eng. Com. Law Rep.* 490; 5 *Bing.* 435; 4 *Esp.* 50; 12 *Wend.* 78; 3 *Eng. Com. Law Rep.* 333; 3 *Burr.* 1245; 6 *East* 195.

The opinion of the court was delivered by

ROGERS, J.—It is a general rule, that a party cannot bring evi-

[Braddee v. Brownfield.]

dence to confirm the good character of a witness, before the credit of the witness, which is always presumed to be good, has been impeached by evidence impugning his general character. But the rule is open to some exceptions, as in the case of a will, when one of the subscribing witnesses is dead, as in Provis *v.* Reed, 18 *Com. Law Rep.* 490; Stephenson *v.* Walker, 4 *Esp.* 50: or where, on his cross-examination, the witness admits, or it is otherwise proved, that he has committed an offence which affects his character, the person who calls him is permitted to prove that his general character since the conviction has been good, as in Russel *v.* Coffin, 8 *Pick.* 154; and Rex *v.* Clarke, 2 *Stark.* 241; 3 *Eng. Com. Law Rep.* 334. In Provis *v.* Reed the distinction is taken between wills and notes, bonds or other instruments of writing. The attesting witness to the will was dead, and Best, C. J., says: "that with regard to the imputations on the character of Scott, the attesting witness, who prepared the will, if the demandant had merely imputed to him an error of judgment, perhaps the evidence would not have been admissible; but if it was imputed to Scott, that having caused a will to be executed imperfectly, he had added an attesting witness, after the death of the testator; that in effect he had committed a forgery: if his moral character was thus attacked, those who were interested in it had a right to defend it. A passage has been cited from Buller's N. P., and it is contended that there is no distinction between the cases of an attesting witness to a will, and the witnesses to bills, notes and the like. But bills are usually of a recent date, while wills are often undisputed till all the parties present at the execution of them have ceased to be in existence. In such a case there is no way of protecting the character of a witness other than admitting such evidence. In many cases, necessity forms the law. In The Bishop of Durham *v.* Beaumont, 1 *Camp.* 207, great stress is laid on the fact that the witness was dead. Then, speaking of the case of Stephenson *v.* Walker, the attesting witness whose character was disputed, was dead, and it was properly held, that the party claiming under the will should have the same advantage as if he were alive. In that case they must have been personally adduced as witnesses, when their characters would have appeared on their cross-examination, and being dead, justice required that an opportunity should be given to show what credit was to be attached to their attestation of the will. For the same reasons in Wright *et al. v.* Clymer, 3 *Burr.* 1245, Lord Mansfield held, that evidence of the conduct of the deceased witnesses might be received to attract credit to their testimony, or to destroy its effect. Starkie, in his Evidence, page 186, says: "A party cannot bring evidence to confirm the character of a witness before the credit of that witness has been impeached, either upon a cross-examination, or by the testimony of other witnesses; but if the character of a witness has been impeached, although upon cross-examination only, evidence on the other side may be given to support the character of the witness by

[Braddee v. Brownfield.]

general evidence of good conduct." But the authorities cited do not support the rule to this extent; and it is expressly repudiated in Russel *v.* Coffin, 8 *Pick.* 154,.and cannot be reconciled with the position taken by Mr Justice Bronson in 19 *Wend.* 595. In Russel *v.* Coffin, 8 *Pick.* 154, it is said, "that it never was decided that if a witness was contradicted as to any part of his testimony, either by his own declarations at other times, or by other witnesses, evidence might be admitted to prove his general good character. If this were the practice, great delay and confusion would arise, and as almost all cases are tried upon controverted testimony, each witness must bring his compurgators to support him when he is contradicted; and, indeed, it would be a trial of the witnesses and not of the action. 'Whether, if the witness to the receipt had been dead, at the trial, his general good character might have been proved, I shall not undertake to say. We, however, are of the opinion, that as the defendant in error has not brought his case within the benefit of either of the exceptions, the evidence of general character was improperly received. There is nothing in the other errors.

Judgment reversed, and a *venire de novo* awarded.