830 A.2d 567

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Curtis FULTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 31, 2001.

Decided Aug. 19, 2003.

284

Ronald Greenblatt, for Curtis Fulton, Appellant.

Hugh J. Burns, Philadelphia, for the Com. of Pa, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice CASTILLE.

This Court granted discretionary review of this matter arising under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, to resolve two questions: (1) whether trial counsel was ineffective in failing to present evidence of appellant's good character for truthfulness; and (2) whether

the Superior Court erred in failing to remand this matter for the PCRA court to file an opinion reflecting its independent consideration of the counsel ineffectiveness claim. This Court resolved the second question in an opinion filed on May 30, 2002, in which we remanded the matter to the PCRA court to file an opinion. *Commonwealth v. Fulton,* — A.2d —, 2002 WL 1160755 (Pa. May 30, 2002). We now address the ineffectiveness issue. For the reasons set forth below, we conclude that no relief is due because the Commonwealth did not impeach appellant's reputation for truthfulness, but rather merely challenged the veracity of his testimony in this case; accordingly, appellant's underlying claim that evidence of his good reputation for telling the truth was admissible to rebut the Commonwealth's attack on his truthful character lacks arguable merit. We therefore affirm the order of the Superior Court.

On September 30, 1993, a jury convicted appellant of rape, three counts of robbery, three counts of involuntary deviate sexual intercourse, conspiracy and possessing an instrument of crime, and appellant was subsequently sentenced to an aggregate term of twenty to forty years' imprisonment.[1] The Commonwealth's evidence against appellant consisted primarily of the testimony of victims O.H., M.H. and L.S. These female victims testified that on the night of October 4, 1991, at approximately 10:30 p.m., they were walking together through a deserted schoolyard on the way to M.H.'s mother's house with M.H's one-year old child, who was in a stroller, when they became aware that two men were following them. One of these men confronted the women, brandished a gun and announced "this is a stickup." The second man then approached the victims from behind and ordered them to go to a darkened stairway on the side of the school. The victims complied, and once they were in the stairway, they were ordered to hand over their money and jewelry to the two men. The man who had initially brandished a gun then fled the scene, but the second man remained. He ordered the women

---

1. Appellant was tried twice previously on these offenses but both of these trials resulted in deadlocked juries.

to lie down on their stomachs and then forced each woman to perform oral sex on him. He then raped and sodomized L.S. O.H. and M.H. identified appellant as the man who robbed and sexually assaulted them.

Appellant presented an alibi defense. Appellant testified that at some time prior to nightfall on October 4, 1991, he attempted to enter his house but was unable to do so because the house was locked, he did not have a key and no one else was at home. He then went across the street to the home of Titus Lawhorn. Appellant testified that he spent the entire night at Lawhorn's house drinking beer and socializing and did not leave the house until some time between 1:00 and 2:00 a.m. on October 5. Lawhorn, Lawhorn's fiancee, Rene Washington, and Tywanda Butler also testified on appellant's behalf that appellant spent the entire night of the crimes at Lawhorn's home.

On direct appeal, the Superior Court affirmed the trial court's judgment of sentence. *Commonwealth v. Fulton*, 448 Pa.Super. 651, 671 A.2d 768 (1995) (unpublished opinion). This Court denied allowance of appeal. 544 Pa. 668, 677 A.2d 838 (1996). Appellant then filed a *pro se* petition for relief under the PCRA. New counsel was appointed and amended petitions were filed. The PCRA court dismissed appellant's PCRA petition without a hearing. After appellant appealed to the Superior Court, the PCRA court filed a brief opinion in which it failed to articulate its independent view of why summary dismissal was appropriate, but instead adopted the "discussion" of the issues set forth by the Commonwealth in its Motion to Dismiss "as controlling."

A divided panel of the Superior Court affirmed the dismissal of the PCRA petition in a memorandum opinion, with now President Judge Del Sole dissenting. Regarding the PCRA court's wholesale adoption of the Commonwealth's Motion to Dismiss, the Superior Court acknowledged the rule announced in the capital case of *Commonwealth v.(Roy) Williams*, 557 Pa.207, 732 A.2d 1167 (1999), requiring a PCRA court to provide an independent expression of its reasons for summarily dismissing a PCRA petition, but concluded that this rule

was inapplicable to non-capital cases. On the question of whether trial counsel was ineffective for failing to present evidence of appellant's alleged good reputation for truthfulness, the panel majority noted that character evidence of the defendant's truthfulness is admissible only if: (1) the character trait of truthfulness is implicated by the elements of the charged offenses; or (2) the defendant's character for truthfulness was attacked by evidence of bad reputation. Finding neither circumstance to be implicated here, the panel majority concluded that character evidence of truthfulness would not have been admissible and, therefore, counsel was not ineffective for failing to pursue and present such evidence. Judge Del Sole dissented on both the procedural question and the reputation evidence question. The dissent concluded that the case should have been remanded for "an independent judicial analysis and opinion." In addition, Judge Del Sole noted that he would have deemed evidence of appellant's character for truthfulness admissible because credibility was of paramount importance at appellant's trial.

In our prior opinion in this case, we resolved the procedural issue by holding that the *(Roy) Williams* rule applies to non-capital criminal cases. Consequently, this Court remanded the matter to the PCRA court for preparation of an independent opinion on the ineffectiveness question. This opinion has since been filed, and thus we turn to the merits of the ineffectiveness claim.

Appellant asserts that trial counsel was ineffective in failing to present evidence of his good character for truthfulness.[2]

2. Appellant additionally claims that trial counsel was ineffective in failing to present evidence of his character for peacefulness. *See* Brief for Appellant at 12, 13. This claim, however, was not raised in appellant's PCRA petition. In the PCRA court, appellant alleged only that "[t]rial counsel was ineffective for failing to call witnesses for the purpose of establishing petitioner's character for truthfulness and for failing to move *in limine* prior to trial with respect to petitioner's prior record where petitioner testified that he did not commit these offenses and where that testimony and petitioner's credibility were directly challenged by the prosecution." Petitioner's Second Amended Petition for Post-Conviction Review at 2. Because this issue was not raised in the PCRA court below, it is waived on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised

Specifically, appellant faults trial counsel for failing to introduce the testimony of his brother, Ronald Fulton, his mother, Floran Fulton, his sister, Suzette Williams, and his brother-in-law, Anthony Williams, who, appellant alleges, would have testified that they know appellant to have a good reputation in the community for truthfulness. Appellant contends that this evidence of his reputation for truthfulness was admissible to rebut the Commonwealth's impeachment of his character for telling the truth. Appellant notes that the eyewitness testimony of the complainants directly contradicted his testimony that he did not attack the victims and that he was somewhere other than the scene of the crimes at the time they occurred. Appellant further notes that the prosecutor aggressively cross-examined him and challenged his veracity in her closing argument. Appellant contends that the complainants' testimony and the prosecutor's attacks on the truthfulness of his testimony placed his character for truthfulness at issue. In this situation, appellant argues, "well-settled controlling authorit[ies]"—in particular, two decisions of this Court, *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989), and *Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992)—provide that "evidence that the defendant has a good reputation for truthfulness is relevant and admissible." Brief for Appellant at 13. In addition, appellant contends that since his trial counsel swore in an affidavit filed with the PCRA court that he did not even consider calling witnesses to testify as to appellant's good reputation for truthfulness, trial counsel could not have had a reasonable basis for failing to present such evidence. Finally, appellant asserts that he was prejudiced by trial counsel's alleged ineffectiveness because "[t]here is no question that counsel's failure to present character evidence under these circumstances 'undermined [his] chances of instilling reasonable doubt in the minds of the jury.'" Brief for Appellant at 20 (quoting *Weiss*, 606 A.2d at 443).

for the first time on appeal."); *Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 39 (2002); *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 725 (2000); *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 704, 706 (1998).

The Commonwealth responds that appellant's ineffectiveness claim is waived and, in any event, is meritless. The Commonwealth argues that this claim could have been raised on direct appeal but was not, and the allegation is thus waived for purposes of the PCRA. On the merits, the Commonwealth contends that the law in Pennsylvania has long been that a defendant in a criminal case may not offer evidence of his good character for truthfulness to bolster his credibility unless his character for truthfulness has first been attacked by the prosecution. The Commonwealth asserts that, although the prosecution contested the truthfulness of appellant's testimony regarding his actions on the night of the crimes, at no point did the prosecution assail appellant's character or reputation for truthfulness generally. Thus, the Commonwealth argues that the prosecution did not open the door to the introduction of evidence of appellant's alleged good reputation for truthfulness and such evidence was therefore inadmissible. Because this evidence would have been inadmissible, the Commonwealth asserts that trial counsel was not ineffective.[3]

In reviewing the trial court's denial of PCRA relief, our standard of review is limited to whether the trial court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582, 586 (1999). To be eligible for relief under the PCRA, an appellant must prove by a preponderance of the evidence that the conviction or sentence he is collaterally attacking resulted from one of seven specifically enumerated circumstances. 42 Pa.C.S. § 9543(a)(2) (as amended effective

3. Moreover, the Commonwealth contends that appellant has failed to prove prejudice. The Commonwealth asserts that defense witness Anthony Williams testified on cross-examination that he met with appellant on the night of the crimes in appellant's home, which "substantially undermined" the testimony of appellant and his alibi witnesses that he spent the night of the crimes at the home of Titus Lawhorn. Brief for Appellee at 22. In light of the fact that one of appellant's own witnesses contradicted his professed alibi, the Commonwealth argues that it is not reasonably probable that if evidence of appellant's reputation for truthfulness had been presented, the jury would have believed the alibi and found him not guilty. Because we conclude that appellant's underlying claim lacks arguable merit, we do not reach this argument.

January 17, 1996).[4]  In addition, an appellant must prove that the issues he raises have not been previously litigated or waived.  *Id.* § 9543(a)(3).  An issue is waived for purposes of the PCRA if "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  42 Pa.C.S. § 9544(b).

■  At the outset, we note that we disagree with the Commonwealth's assertion that appellant's ineffectiveness claim is waived.  Appellant was represented at trial and on direct appeal by members of the Defender Association of Philadelphia.  "As a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness."  *Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (1998) (citations omitted).  Appellant's PCRA petition thus represented the first proper opportunity to challenge trial counsel's ineffectiveness.  The claim is therefore not waived.  Accordingly, we proceed to consideration of the merits of appellant's ineffectiveness allegation.

4.  Those circumstances are as follows:
   (i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
   (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
   (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty and the petitioner is innocent.
   (iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
   (v) Deleted.
   (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
   (vii) The imposition of a sentence greater than the lawful maximum.
   (viii) A proceeding in a tribunal without jurisdiction.
   42 Pa.C.S. § 9543(a)(2)(i)–(viii).

To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. *Commonwealth v. (Michael) Pierce*, 567 Pa.186, 786 A.2d 203, 213 (2001); *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *(Michael) Pierce*, 786 A.2d at 221–22; *see also Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met."). In addition, to succeed on a claim of trial counsel's ineffectiveness for failure to call a witness, the appellant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant. *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 292 (2000) (citation omitted).

It has long been the law in Pennsylvania that a defendant in a criminal case may introduce evidence of his reputation for truthfulness in but two circumstances. First, the accused may introduce evidence of his truthful character if the trait of truthfulness is relevant to the crime with which he has been charged. *E.g., Commonwealth v. Thomas*, 282 Pa. 20, 127 A. 427, 428 (1925) ("Evidence of a good moral character offered by the defendant in a criminal prosecution must be limited to the particular trait of character involved in the commission of the crime charged") (citation omitted); *Commonwealth v. Colandro*, 231 Pa. 343, 80 A. 571, 575 (1911) (same); *Common-*

*wealth v. Stefanowicz,* 118 Pa.Super. 79, 179 A. 770, 771 (1935) (same). *See also Commonwealth v. Pressel,* 194 Pa.Super. 367, 168 A.2d 779, 780 (1961) (traits of truth and veracity pertinent to charges of burglary and larceny); *but see Commonwealth v. Schwenk,* 777 A.2d 1149, 1156 (Pa.Super.2001) ("We agree that the traits of truthfulness and honesty are not relevant to the offenses of aggravated assault and resisting arrest, and therefore, we conclude that the trial court did not err in disallowing [the defendant from presenting character testimony as to these traits]"); *Commonwealth v. Lemanski,* 365 Pa.Super. 332, 529 A.2d 1085, 1096 (1987) ("We agree with the trial court that 'honesty is not inherent or relevant on the charge of manufacturing . . . or possessing drugs' ").

Second, the accused may introduce evidence of his truthful character if his reputation for truthfulness has first been attacked by the prosecution. *See Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 151 (1998) ("Evidence of truthfulness or honesty may not be introduced to bolster credibility unless defendant's truthfulness or honesty has first been attacked"); *see also Wertz v. May,* 21 Pa. 274, 279 (Pa.1853) ("Evidence in support of the general character of witnesses, is not competent until their general character has been assailed. Every witness puts his character in issue; but until evidence tending directly to impeach it is produced, the law presumes it to be good, and therefore testimony to prove it good is superfluous"); *Braddee v. Brownfield,* 9 Watts 124, 125 (Pa.1839) ("A party cannot bring evidence to confirm the character of a witness before the credit of that witness has been impeached, either upon a cross-examination, or by the testimony of other witnesses; but if the character of a witness has been impeached, although upon cross-examination only, evidence on the other side may be given to support the character of the witness by general evidence of good conduct") (citation omitted). One's character for truthfulness refers not to suggestions of particular instances of honesty or dishonesty, but rather to one's general reputation in the community for telling the truth. *See Commonwealth v. Jones,* 280 Pa. 368, 124 A. 486, 486 (1924); *Commonwealth v. Fisher,* 764 A.2d 82, 87 (Pa.Super.2000);

*Commonwealth v. Stilley,* 455 Pa.Super. 543, 689 A.2d 242, 251 (1997). Thus, where the prosecution has merely introduced evidence denying or contradicting the facts to which the defendant testified, but has not assailed the defendant's community reputation for truthfulness generally, evidence of the defendant's alleged reputation for truthfulness is not admissible. *See, e.g., Commonwealth v. Schwenk,* 777 A.2d 1149, 1156 (Pa.Super.2001); *Fisher,* 764 A.2d at 87; *Commonwealth v. Boyd,* 448 Pa.Super. 589, 672 A.2d 810, 812 (1996); *Commonwealth v. Fowler,* 434 Pa.Super. 148, 642 A.2d 517, 519 (1994). Similarly, cross-examination of the defendant that challenges the veracity of his testimony in the particular case, but does not touch upon his general reputation in the community for being truthful, does not open the door to the introduction of good character evidence concerning reputation for truthfulness. *See Schwenk,* 777 A.2d at 1156; *Fowler,* 642 A.2d at 519.[5]

Here, appellant's underlying claim is that the prosecution opened the door to the introduction of reputation evidence of his truthful character. As the Commonwealth notes, however, appellant does not allege, nor does the record reveal, any instance at trial where the Commonwealth attacked, impugned or otherwise besmirched his general reputation in the community for telling the truth. At no point did the Commonwealth allege or elicit evidence to the effect that appellant was known to others in the community to be a person given to lies or dishonesty. It is true that the Commonwealth attempted to establish through live testimony that the victims' version of events was more believable than appellant's by having the victims testify, by cross-examining appellant, and by disputing

5. These limits on the admissibility of evidence of character for truthfulness are now embodied in the Pennsylvania Rules of Evidence. *See* Pa.R.E. 404(a)(1) ("In a criminal case, evidence of a **pertinent** trait of character of the accused is admissible when offered by the accused, or by the prosecution to rebut the same") (emphasis added); Pa.R.E. 608(a) ("The credibility of a witness may be attacked or supported by evidence in the form of reputation as to character, but subject to the following limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) **evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise**") (emphasis added).

the veracity of appellant's testimony during closing argument. But these actions by the prosecutor did not amount to an attack on appellant's reputation for truthfulness generally such as would permit the introduction of bolstering evidence of appellant's good reputation for telling the truth. *See Schwenk*, 777 A.2d at 1156–57 (cross-examination of defendant and testimony of Commonwealth witnesses presenting conflicting facts as to what occurred during incident in question did not open door to presentation of character testimony to bolster defendant's credibility); *Fisher*, 764 A.2d at 87 (although Commonwealth attempted to establish that victim's version of events was more credible than defendant's by vigorously cross-examining defendant and having victim testify in rebuttal to defendant's testimony, these factors in and of themselves did not allow defendant to enhance or bolster his testimony in eyes of jury by introducing collateral evidence to establish his reputation for telling truth); *Fowler*, 642 A.2d at 519 (where defendant was not impeached by evidence of bad reputation for truth and veracity or by evidence of prior convictions but was merely contradicted by evidence of facts introduced and relied upon by Commonwealth, evidence of defendant's good reputation for truth and veracity was inadmissible to bolster credibility of his testimony). In the absence of any effort by the prosecution to impeach appellant's general reputation in the community for truthfulness, evidence of appellant's alleged good reputation for veracity was inadmissible at his trial.

The substantially broader rule urged by appellant that evidence of a criminal defendant's character for truthfulness may be introduced whenever the Commonwealth has cast doubt on the testifying defendant's veracity, whether by introducing conflicting testimony, cross-examining the defendant, or other means, finds no support in the two decisions of this Court upon which he principally relies, *Commonwealth v. Neely*, 522 Pa. 236, 561 A.2d 1 (1989), and *Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992). In *Neely*, the appellant was convicted by a jury of recklessly endangering another person and possessing an instrument of crime. At his trial,

Neely presented two witnesses who attested to his "excellent" reputation for being a peaceful and law abiding citizen. At the conclusion of the trial, Neely requested a jury instruction in accordance with the Pennsylvania Standard Jury Instructions that "evidence of good character may, by itself, raise a reasonable doubt of guilt and justify a verdict of not guilty." The trial court refused to issue the charge. This Court, however, noted that it had long recognized the importance of character evidence and that such evidence may, in itself, raise a reasonable doubt of a defendant's guilt. Accordingly, the Court held that Neely was entitled to the requested instruction. 561 A.2d at 3.

In *Weiss*, the appellant was convicted of rape and related offenses stemming from the sexual assault of his daughter. Among other evidence, the prosecution presented the testimony of the victim, while "[t]he defense's case consisted principally of the testimony of appellant, who vehemently denied the accusations, appellant's two roommates who corroborated appellant's testimony, and two children of one of appellant's roommates who testified that they had occasionally seen appellant and the victim in bed together." *Id.* at 441. On appeal, Weiss alleged that his trial counsel was ineffective in failing to present character witnesses on his behalf.[6] This Court noted that, "[i]n a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility." *Id.* at 442. The Court noted also that, "[e]vidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *Id.* at 442 (citing *Neely, supra*). Accordingly, the Court concluded that Weiss's claim "was not without merit." *Id.* The Court further concluded that Weiss's trial counsel had no reasonable basis for failing to present character evidence and that he was prejudiced by counsel's

6. *Weiss* does not specify what particular character trait(s) these witnesses would have testified to, as the admissibility of this evidence was apparently uncontested by the parties.

omission. Consequently, the Court held that Weiss's trial counsel was ineffective in failing to present evidence of his good character.

Thus, both *Neely* and *Weiss* emphasized that evidence of a defendant's good character may, in and of itself, be sufficient to raise a reasonable doubt of guilt and produce an acquittal. *Weiss* also observed that such evidence may be particularly critical to the defense in a prosecution that pits the credibility of the Commonwealth's witnesses against that of the defendant. It is one thing, however, to note the potential importance of admissible good character evidence and quite another to alter longstanding and principled standards governing the introduction of reputation evidence for truthfulness. There is nothing in either *Neely* or *Weiss* to suggest, as appellant would have it, that an accused may introduce evidence of his good reputation for truthfulness whenever the credibility of his testimony has been challenged or contradicted by the prosecution, even if the trait of truthfulness is irrelevant to the offenses with which he has been charged and his general reputation for telling the truth has not been attacked.

Because the Commonwealth did not attack appellant's reputation for truthfulness generally, appellant's underlying claim that evidence of his truthful character was admissible to rebut the prosecution's impeachment of his character trait for veracity lacks arguable merit. Accordingly, there can be no finding of ineffectiveness. *See, e.g., Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300, 1304 (1994) ("Trial counsel cannot be held to be ineffective for failing to take futile actions or to raise a meritless claim").[7] The order of the Superior Court is therefore affirmed.

7. Moreover, it must be emphasized that this case sounds in counsel ineffectiveness. Counsel's performance must be measured by contemporaneous standards. Thus, even if the admissibility of character evidence were to expand as appellant would have it someday, that day had not yet come when this matter was tried. Counsel cannot be faulted for failing to anticipate an as-yet non-existent expansion of the admissibility of reputation evidence. *See Commonwealth v. Todaro,* 549 Pa. 545, 701 A.2d 1343, 1346 (1997) ("[C]ounsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be

Justice LAMB files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice CAPPY and Justice NIGRO join.

Justice LAMB concurring.

I join the majority in affirming the order of the Superior Court because the overwhelming evidence in this case makes the error of failing to call character witnesses harmless. In other respects, I join the reasoning of the dissent and write separately to emphasize the long-established rule that a criminal defendant may always present character evidence which is not "mere make-weight ... but it is positive evidence, and may of itself, by the creation of a reasonable doubt, produce an acquittal." *Commonwealth v. Cleary*, 135 Pa. 64, 19 A. 1017, 1018 (1890). In *Cleary*, the error cited was a charge to the jury which limited the use of character evidence to those cases in which there was already reasonable doubt. This Court held in *Cleary* that:

> Evidence of good character is always admissible for the defendant in a criminal case. It is to be weighed and considered in connection with all the other evidence in the cause. It may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. There may be cases in which, owing to the peculiar circumstances in which a man is placed, evidence of good character may be all he can offer in answer to a charge of crime. Of what avail is a good character, which a man may have been a life-time in acquiring, if it is to benefit him nothing in his hour of peril? ... The evidence of good character is to be considered with the other evidence in the case; and if it, all combined, creates a reasonable doubt, the defendant is entitled to an acquittal.

*Cleary*, 19 A. at 1018–19.

Under *Cleary*, character evidence is always relevant in a criminal case. That evidence, therefore, would be admissible

deemed ineffective for failing to predict future developments or changes in the law").

under Pa.R.E. 402: "All relevant evidence is admissible." Relevant evidence is that which "in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 159 (1978) (citing 1 Wigmore, Evidence, § 9–10 at 289–95 (3rd Ed.1940)).

The rule announced in *Cleary* is of ancient origin, first enunciated in Pennsylvania in *Kimmel v. Kimmel*, 3 Serg. & Rawle 336 (Pa.1817), which also set the limits by which character evidence is introduced, that is through reputation, not opinion. *Kimmel*, 3 Serg. & Rawle at 338 ("General report is general reputation. General reputation is general character.") (Duncan, J.). *See also Heine v. Commonwealth*, 91 Pa. 145, 147 (Pa.1879) (holding "evidence of good character is not a mere makeweight, thrown in to assist in the production of a result that would happen at all events, but is positive evidence, and may of itself, by the creation of a reasonable doubt, produce an acquittal."); *Hanney v. Commonwealth*, 116 Pa. 322, 9 A. 339, 340–41 (1887) ("fortunately for the upright man . . . , we have got beyond all doubt upon this subject, and have firmly established the doctrine that evidence of good character is to be regarded as a substantive fact, like any other tending to establish the defendant's innocence . . . ."); *Commonwealth v. Tenbroeck*, 265 Pa. 251, 108 A. 635, 637 (1919) ("A man of good standing is less likely to commit crime, and evidence of good reputation may of itself work an acquittal, by creating a reasonable doubt of guilt . . . ."); *Commonwealth v. Stoner*, 265 Pa. 139, 108 A. 624, 625 (1919) ("Good character . . . may, in itself, in spite of evidence to the contrary, raise a reasonable doubt in the minds of the jury and so produce an acquittal."); *Commonwealth v. Giovanetti*, 341 Pa. 345, 19 A.2d 119, 126 (1941) (same holding); *Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607, 611 n. 1 (1981) ("[a] defendant is entitled to a charge that character evidence alone may be sufficient to raise a reasonable doubt and justify an acquittal of the charges.").

These cases culminated in *Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992), in which this Court held that the failure

to call available character witnesses constituted ineffective assistance of counsel because:

> In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty.

*Weiss,* 606 A.2d at 442 (citing *Commonwealth v. Neely,* 522 Pa. 236, 561 A.2d 1, 3 (1989)).

This Court in *Weiss* reversed a child sexual assault conviction and remanded for a new trial. *Weiss* is only distinguishable from the case at hand because in *Weiss* "there was no overwhelming evidence of guilt." *Weiss,* 606 A.2d at 443.

Therefore, under *Weiss,* as stated in *Cleary,* character evidence is always relevant and admissible. Character evidence includes reputation for truthfulness. *Kimmel,* 3 Serg. & Rawle at 337. When prosecution witnesses dispute the testimony of the defendant, his reputation for truthfulness is in play. *Weiss,* 606 A.2d at 443.

Therefore, Appellant received ineffective assistance of counsel when counsel failed to call character witnesses. In this case, however, the error is harmless because of the overwhelming evidence against Appellant. Accordingly, I concur in the result.

Justice SAYLOR.

I respectfully differ with the conclusion set forth in the opinion announcing the Court's judgment that a criminal defendant may introduce evidence of his character for truthfulness only in situations where the trait of truthfulness is relevant to the crime with which he has been charged or when his reputation for truthfulness has first been attacked by the prosecution. *See* Opinion Announcing the Judgment of the Court, *op.* at 572–573.[1] In my view, the difficulty with such an

---

1. Although Appellant has not argued that he should have been permitted to introduce evidence of his character for truthfulness, because the

approach is that a trial court is foreclosed from exercising its discretion to permit character evidence where a defendant's veracity has been challenged by means other than through reputation evidence. Indeed, Pennsylvania Rule of Evidence 608(a)(2) recognizes this concern by permitting evidence of truthful character where the witness's veracity "has been attacked by reputation evidence or otherwise." Pa.R.E. 608(a)(2).

■ Other jurisdictions have acknowledged that the phrase "or otherwise" may include situations where the witness's character is attacked by questions that are directed at an issue in the case, but nevertheless have the actual effect of assailing the witness's veracity. *See, e.g., Pierson v. Brooks,* 115 Idaho 529, 768 P.2d 792, 795 (Ct.App.1989); *United States v. Dring,* 930 F.2d 687, 692 (9th Cir.1991) (stating that a vigorous cross-examination can trigger rehabilitation where the evidence amounts to an indirect attack on the witness's character for truthfulness); *United States v. Everage,* 19 M.J. 189, 192–93 (C.M.A.1985); *see also* JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE § 47 at 191 (5th ed. 1999) ("[A] slashing cross-examination may carry strong accusations of misconduct and bad character, which even the witness's denial will not remove from the jury's mind[;][i]f the judge considers that fairness requires it, he may permit evidence of good character, a mild palliative for the insinuation of a combative cross-examination."); *cf. State v. Eugenio,* 219 Wis.2d 391, 579 N.W.2d 642, 647–49 (1998) (concluding that statements made in an opening

trait of truthfulness is relevant to the robbery charge, I note that this Court has held that a robbery conviction involves an element of dishonesty and constitutes a *crimen falsi* that may be used to impeach a defendant's veracity. *See Commonwealth v. Strong,* 522 Pa. 445, 451–52, 563 A.2d 479, 482 (1989) (concluding that a defendant's robbery conviction involved an element of dishonesty tending to discredit him as untruthful and was properly admitted by the trial court for impeachment purposes); *Commonwealth v. Henderson,* 497 Pa. 23, 35–37, 438 A.2d 951, 957–58 (1981) (holding that the trial court properly determined that defendant's prior convictions for theft and robbery were admissible to impeach his credibility in a rape case, because the convictions were recent and were highly pertinent to the defendant's veracity and credibility). I recognize, however, that such issue is not presently before the Court.

statement that challenged the truthful character of a potential witness was included within the term "otherwise," and therefore, the trial court properly admitted rehabilitative evidence). Thus, I would favor a more flexible approach, which would allow the trial court to permit rehabilitative evidence in limited situations where it believes that the witness's character for veracity has been impugned.

As the lead opinion notes, Appellant presented an alibi defense that he was at Titus Lawnhorn's home on the evening when the attacks occurred. *See* Opinion Announcing Judgment of the Court, *op.* at 569. In support of this defense, Appellant offered the testimony of three witnesses, who testified that they were with Appellant at Lawnhorn's home, and that Appellant had mentioned that he planned on going on a fishing trip the following day. The three witnesses further stated that, after Appellant returned from the outing, he informed them that he had been cited for fishing without a license. Appellant also presented the testimony of Anthony Williams, who stated that he had met with Appellant on the night in question to discuss plans for the fishing trip, and that he was with Appellant when he received the citation on the following day.

During cross-examination, the prosecutor questioned these witnesses about the fishing trip and, more specifically, asked three of the alibi witnesses if Appellant had given a false name when he was initially approached by the gaming officials. *See* N.T. at 800–01, 810, 850. Two of the witnesses denied any knowledge, *see* N.T. at 801, 810, but the third, Renee Washington, testified that Appellant had told her that he had given a false name. *See* N.T. at 850. Appellant's counsel did not object to any of these questions.

Appellant then took the stand and admitted on direct examination that he had initially told the officials that his name was Edward Ford, because he did not want to pay the fifty-dollar fishing fine. On cross-examination, the prosecutor questioned Appellant about the incident:

[Prosecutor]: At that time, when you knew you were going to get a fine, you lied about your name, correct?

[Appellant]: Yes, I did.

[Prosecutor]: The reason that you lied about your name to these gaming officials was to get out of paying a fine, correct?

[Appellant]: Yes. I didn't want to pay a fine.

. . .

[Prosecutor]: So you lied to get out of that; is that correct?

[Appellant]: Yes.

[Prosecutor]: At that point, when you lied about your name, where was Anthony Williams?

[Appellant]: Standing over to the side. Standing over to the side.

[Prosecutor]: What happened to you when you lied about your name?

[Appellant]: They put handcuffs on me after they found out. They found out Curtis Fulton.

N.T. at 894–95.[2] In her closing argument, the prosecutor stated:

[Prosecutor]: No, [the defendant] doesn't have to prove anything. I have the burden of proof. But when he puts on evidence, and you believe that evidence to be false, you make the decision why. Closing now. No fishing gives you a clue, gives you a window into the character of the defendant. A window which says—

[Counsel for Fulton]: Objected to. The window into the character of the defendant—

[The court]: Overruled.

**2.** I would note that Pennsylvania law prohibits the use of specific instances of a witness's own misconduct for the purpose of attacking the witness's character for truthfulness, and, thus, an objection on that basis might have foreclosed the prosecutor from pursing this matter. *See* Pa.R.E. 608(b)(1). Rule 608(b)(1) differs from Federal Rule of Evidence 608(b), as the federal analogue gives the court discretion to permit the cross-examination of a witness concerning specific instances of misconduct when the incidents are probative of the witness's own character for truthfulness. *See* Pa.R.E. 608 cmt; F.R.E. 608(b).

[Prosecutor]:—gives you a clue. If he would lie to get out of a fishing ticket, what would he do to get out of getting caught in a rape, a robbery? Get his neighbors together, say you remember I was here on October 4th, don't you. . . .

[Prosecutor]: If you would lie about a fishing ticket, what would he do to get out of rape? Prance around, take the DNA test, turn himself in. Best offense is a good defense.

N.T. 1049–50.

■ Although the prosecutor did not present specific character witnesses to comment on Appellant's bad reputation in the community for untruthfulness, the prosecutor used a specific instance of untruthfulness, with limited relevance to the crime to which Appellant had been charged, to establish Appellant's character for untruthfulness. Given the net effect of these statements, I cannot conclude that Appellant's ineffectiveness claim lacks arguable merit, especially as the central issue in this case was one of credibility which turned on whether to believe the victims' testimony or that of Appellant and his alibi witnesses. Therefore, I would remand in order for the PCRA court to conduct an evidentiary hearing to determine whether Appellant has established the requisite prejudice to prevail on his ineffectiveness claim, particularly since the PCRA judge did not preside over Appellant's trial.

Chief Justice CAPPY and Justice NIGRO join this dissenting opinion.