J-S52007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN ELLIS | : | |
| | : | |
| Appellant | : | No. 968 EDA 2020 |

Appeal from the PCRA Order Entered March 2, 2020
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006934-2015

BEFORE: PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED MARCH 9, 2021**

Justin Ellis, *pro se*, appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. In his petition, Ellis presents three separate instances where he claims his trial counsel was ineffective. In addition, Ellis contends that the Commonwealth engaged in prosecutorial misconduct. We affirm.

Preliminarily, we note that most of the factual and procedural history of Ellis's case can be found in his direct appeal. ***See Commonwealth v. Ellis***, 3146 EDA 2016, 2018 WL 4062300 (Pa. Super. Aug. 27, 2018). Briefly, after being advised of a vehicle with a suspended registration, a police officer pulled over Ellis's vehicle operated which matched the description. Ellis had a passenger with him at the time. The officer subsequently determined that both

_____

[*] Former Justice specially assigned to the Superior Court.

the vehicle's registration and Ellis's driver's license were suspended.

The officer informed Ellis that his vehicle would have to be towed due to these violations as well as the fact that the vehicle was stopped in an active construction zone. The officer allowed Ellis to extract personal items from the vehicle. The officer, apparently aiding Ellis in this endeavor, opened the vehicle's glove box, took out a gold watch, and handed it to Ellis. When the officer attempted to close the glove box, he was obstructed from doing so by a piece of plastic affixed to the glove box's back wall. The officer pulled down this piece of plastic and uncovered two illicit firearms.

Upon finding those weapons, the officer detained Ellis. Ellis then admitted that he had illegal contraband on his person, namely bags of crack cocaine and heroin. A subsequent search warrant yielded a finding of glass vials in the vehicle that were commonly used to contain drug mixtures.

After being charged with various offenses stemming from this incident, Elis filed two separate motions to suppress evidence, claiming first that his vehicle's inventory search was unlawful. The second motion contended that the inventory search was actually an unlawful investigatory search. The court denied both motions.

Ultimately, after a bench trial, Ellis was convicted of one count of possession with intent to deliver a controlled substance; two counts of possession of a controlled substance; three counts of possession with intent to use drug paraphernalia; and one count each of firearms not to be carried without a license, possession of firearm with altered manufacturer's number,

and receiving stolen property. **See** 35 P.S. § 780-113(a)(30), (16) & (32) and 18 Pa.C.S.A. §§ 6106(a)(1), 6110.2(a) & 3925(a), respectively. The court then sentenced Ellis to 60 to 120 months of confinement followed by ten months of probation.

In his direct appeal, Ellis challenged the trial court's denial of his two suppression motions. **See Ellis**, 2018 WL 4062300 at *1. We found no merit to either contention that the police officer's actions constituted an illegal search and affirmed Ellis's judgment of sentence. **See id**.

Several months later, Ellis timely filed a pro se PCRA petition, his first. The PCRA court appointed counsel. However, counsel subsequently filed a request to withdraw and a Turner/Finley no-merit letter. **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The PCRA court then issued a Pa.R.Crim.P. 907 notice of its intent to dismiss his petition without a hearing. Upon receiving no response from Ellis, it formally dismissed his PCRA petition and granted counsel's request to withdraw. In this appeal, both the PCRA court and Ellis have complied with their respective obligations under Pa.R.A.P. 1925.

Ellis raises four issues for our review:

1. Did the PCRA court err when it concluded that Ellis failed to meet his burden in demonstrating that trial counsel was ineffective for failing to object to the admission of the Commonwealth's laboratory and ballistics reports?

2. Did the PCRA court err when it concluded that Ellis failed to

meet his burden in demonstrating that trial counsel was ineffective for failing to challenge the veracity of the search warrant affidavit during his suppression hearings?

3. Did the PCRA court err when it concluded that Ellis failed to meet his burden in demonstrating that trial counsel was ineffective for not investigating the vehicle's registration?

4. Did the Commonwealth engage in prosecutorial misconduct?

*See* Appellant's Brief, at 4.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted). However, the PCRA court's findings and evidence of record are viewed in a light most favorable to the prevailing party. **See Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015).

Here, the PCRA court did not conduct a hearing on Ellis's petition. Our precedent makes clear that a PCRA court may dismiss a petition without a hearing if it concludes the petition raises no genuine issues of material fact and does not otherwise arguably justify collateral relief. **See Commonwealth v. Cruz**, 223 A.3d 274, 277 (Pa. Super. 2019).

Three of Ellis's four claims assert that his trial counsel was ineffective through inaction at various points prior to his trial. Our case law defining ineffective assistance of counsel is well-settled. First, counsel is presumed to have rendered effective assistance. **See Commonwealth v. Rivera**, 10 A.3d

1276, 1279 (Pa. Super. 2010). Second, Pennsylvania courts are guided by the test promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984*). See Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987). That test, as adopted by our courts, means that in order to demonstrate ineffectiveness, Ellis must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003).

Third, a failure to satisfy any one prong of that three-part test renders an ineffective assistance of counsel claim fatally defective. *See Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002). As such, we, as an appellate court, "need not analyze the prongs of an ineffectiveness claim in any particular order." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016). Fourth, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Id*.

In his first ineffective assistance claim, Ellis suggests that his trial counsel was ineffective for stipulating to two laboratory reports: a drug report and a firearm report. Ellis maintains that, in accordance with *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), his Sixth Amendment right to cross-examine the authors of those reports was violated.

In ***Melendez-Diaz***, the United States Supreme Court determined that "affidavits reporting the results of forensic analysis which showed the material seized by the police and connected to [that] defendant was cocaine" were testimonial evidence. ***Id***., at 307, 310. The Court went on to conclude that the affiants of those affidavits were "witnesses" within the meaning of a defendant's right of confrontation under the Sixth Amendment. ***Id***., at 313-14, 324. As such, a defendant has an inherent right to question laboratory analysts because they "provide[] testimony against [a defendant], proving one fact necessary for ... conviction[.]" ***Id***., at 313 (identifying, there, that the reported "fact" was a positive test for cocaine) (emphasis in original).

That said, ***Melendez-Diaz*** also acknowledged that, given the effective spotlight placed on the forensic analysts should they be asked to provide live testimony, "[d]efense attorneys and their clients will often stipulate to the nature of the substance in the ordinary case." ***Id***., at 328. The Supreme Court then went on to quote an amicus brief for the proposition that "[g]enerally, defendants do not object to the admission of drug certificates most likely because there is no benefit to a defendant from such testimony." ***Id***. (citation omitted).

While Ellis is correct that he had a right to cross-examine the weapons and drug analysts responsible for generating reports used against him at trial, ***Melendez-Diaz*** also plainly reinforces the idea that a defense attorney may, and in fact often will, stipulate to those laboratory findings, which is precisely what happened here. Furthermore, Ellis fails to demonstrate with any

particularity how he was prejudiced by the admission of those laboratory reports.

Without context, Ellis, in his brief, latches on to the testimony of a testifying officer who indicated that "there was some confusion in a prior report[.]" N.T., 7/6/16, at 81. As that officer was not the author of that report, Ellis believes that this confusion should have provided the opportunity to test the veracity of that report's contents. However, that answer was merely responsive to the question "[a]nd you know that there was no fentanyl found in the ZzzQuil?" *Id*. A few moments prior to this cross-examination, that officer affirmatively stated that he had reviewed the drug laboratory report and confirmed that a large majority of the bags Ellis had on his person contained crack cocaine. *See id*., at 76. Ellis does not refute the laboratory's affirmative finding of cocaine or its further affirmative finding of heroin. Rather, he highlights that some of the items that were seized did not contain narcotics.

Similarly, Ellis takes issue with the testimony surrounding the firearms laboratory report. Ellis cites to testimony regarding the inconclusive nature of the firearm DNA tests and the fact that anybody could have put those firearms in Ellis's vehicle or removed the serial numbers from one of the recovered guns. *See* Appellant's Brief, at 18-19; N.T., 7/6/16, at 69-71. However, Ellis does not indicate, with any degree of certainty, what aspect of the firearms report he is specifically contesting or how he has been prejudiced by its admission. In fact, the record reflects a vigorous cross-examination of the

officer that was probative of Ellis's specific relationship with the uncovered firearms. ***See, e.g***., N.T., 7/6/16, at 69-71.

Simply put, other than merely claiming that trial counsel should have objected to the reports and was therefore deficient, Ellis does not further explain precisely what elements of either report required exploration on cross-examination. Accordingly, we see no basis to conclude that the failure to cross-examine the authors of the forensic reports prejudiced Ellis in any discernable way. Ellis is due no relief on this issue.

In his second argument, Ellis contends that his trial counsel was "ineffective for failing to challenge the veracity of the search warrant affidavit during the suppression hearing." Appellant's Brief, at 25. However, Ellis has not established that he suffered any prejudice from this failure.

The affidavit supporting the search warrant was drafted after the discovery of firearms in the vehicle and drugs on Ellis himself. Ellis does not directly refute either basis as providing a pathway to provide probable cause to search the vehicle, but instead highlights inconsistencies between the affiant officer's testimony and facts as purported by Ellis. Even if every alleged erroneous statement made by the officer was stricken from the search warrant, we find that based on this record, there still would have been enough probable cause for a valid search warrant.

More specifically, Ellis, without evidence, baldly suggests that the officer made a false statement as to his rationale when he initially pulled over Ellis's

vehicle because according to Ellis, no one informed the officer that the vehicle's registration was suspended. *See* Appellant's Brief, at 27, 31.

Ellis does not challenge the nucleus of facts utilized to underpin the search warrant, namely the drugs and firearms already known to the affiant officer at that time. Moreover, Ellis fails to demonstrate how any of trial counsel's actions or inactions were deficient or that a refutation of any of the alleged inaccurate statements made in the affidavit would have vitiated the probable cause necessary for the search warrant. In addition, the validity of the search warrant has already been addressed during the trial court's consideration of and ruling on his pretrial suppression motions. Accordingly, Ellis's underlying assertion does not have legal merit, and he furthermore has not adequately demonstrated that prejudice ensued from the purported lies contained within the affidavit of probable cause.

In his third claim, Ellis believes that his trial counsel was ineffective for not investigating the vehicle's registration. He claims that research "would have demonstrated that the police officer committed p[er]jury when offering his testimony[.]" Appellant's Brief, at 36. Ellis avers that his registration was valid for several months after he was arrested. While it may be true that the registration as provided by the Pennsylvania Department of Transportation may have had a documented expiration date beyond the date when he was pulled over and subsequently arrested, such a document does not reflect whether the registration is suspended. *See, e.g., Greenfield v. Com., Dept. Of Transp.*, 67 A.3d 198, 200-201 (Pa. Cmwlth. 2013) (explaining that an

unexpired registration is automatically suspended for three months when there is no insurance covering the vehicle).

Here, the arresting officer confirmed, through the National Crime Information Center System, that Ellis's vehicle registration was suspended after the officer received Information that a vehicle with a description matching Ellis's was being operated with a suspended registration. *See* N.T., 2/29/2016, at 10. Other than simply declaring that "there's no 'Penndot record of a suspended tag,'" Appellant's Brief, at 40, Ellis does not provide any objective indicia to controvert the arresting officer's testimony that his vehicle's registration was suspended at the time he was pulled over. Furthermore, the gravamen of Ellis's underlying assertion, both here and his prior issue dealing with the validity of the initial stop, inventory search, and underlying search warrant, have been definitively addressed throughout the various suppression motions and hearings in this case. As such, Ellis has failed to demonstrate that his underlying claim has merit, and he is due no relief.

Ellis's fourth issue contends that the Commonwealth knowingly admitted false information against him and therefore engaged in prosecutorial misconduct. While his argument is largely vague and undefined, we glean that Ellis is, again, taking issue with some of the facts that were used to obtain the search warrant. Most, if not all, of Ellis's specific claims in this section are contained within other sections of his brief. Given that we have already concluded that Ellis has not established any prejudice from the search warrant application given the undisputed discovery of firearms in his vehicle prior to

the application, we see no reason to conclude that he has suffered from any kind of cumulative error. *See Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) (establishing that, while "lack of merit" claims can never result in a cumulative error claim cognizable under the PCRA, a cumulative prejudice claim may have validity if there are multiple instances of trial counsel's ineffective representation).

Accordingly, for the reasons discussed above, we affirm the PCRA court's dismissal of Ellis's PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/09/2021