J-S08010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN EDWARD SCALES | |
| Appellant | No. 332 WDA 2016 |

Appeal from the PCRA Order dated February 23, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002213-2010

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.: **FILED MAY 03, 2017**

Appellant, Steven Edward Scales, appeals from the order denying his petition filed under the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.

This PCRA court summarized the factual background of this case as follows:

> This matter arises out of [Appellant]'s conviction of third degree murder, attempted homicide, criminal solicitation, aggravated assault, persons not to possess a firearm, carrying a firearm without a license and criminal conspiracy as a result of a shooting that occurred on July 14, 2000 outside the Traveler's Club in the Homewood/East Liberty area of the City of Pittsburgh which resulted in the death of Timothy Raines and the wounding of Kennya Simpson. Despite the fact that there were several witnesses in the area [at the] time of the shooting, the actor or actors were not identified at that time. In January 2009, detectives working on the case were contacted by an attorney for an alleged witness, Allen White, who was incarcerated at the time. The detectives subsequently interviewed White who informed them that he witnessed the shooting and saw Sean

Greene (nicknamed "Elbows") shoot both Raines and Simpson. Shortly thereafter the detectives interviewed Simpson, who was serving a federal prison sentence in Loretto, Pennsylvania for drug trafficking. In a taped statement, Simpson told detectives that it was Sean Greene who shot him and Raines outside the Traveler's Club. Simpson also indicated that only months before the shooting outside the Traveler's Club, Greene, [Appellant] and [a] third person had also shot him while he stood outside Joe's Bar in the East Liberty area of the City.

In August of 2009, [Appellant] who was then incarcerated on unrelated offenses, contacted law enforcement and indicated that he wanted to speak to detectives concerning the shooting. The detectives made arrangements to interview [Appellant] and during a taped interview on August 5, 2009, [Appellant] implicated himself in the Traveler's Club shooting, which killed Raines and wounded Simpson. As a result of their investigation, including [Appellant's] confession, [Appellant] and Greene were charged for their roles in Raines' death and Simpson's wounding. At trial the Commonwealth presented extensive evidence, including [Appellant]'s recorded confession.

In his defense, [Appellant] testified that when he gave the statement implicating himself in the Traveler's Club shooting, he was serving a 21 year sentence for drug dealing. He contended that he learned some basic facts about the shooting from Simpson himself, when they were both incarcerated in Loretto, and that he decided to give a false statement to the detectives implicating Greene, and thus himself, in an ill-conceived and misguided attempt to appear to be cooperating with authorities. [Appellant] contended that he believed his cooperation could be used to negotiate an early release from prison. [Appellant] recanted his confession, contending it was a complete lie, and testified that he was never involved with Simpson, who was the apparent target of the shooting, and had no reason to want him killed.

[Appellant] also presented the testimony of an attorney who had represented him in other criminal charges, who testified that [Appellant] had attempted to obtain a sentence reduction during his earlier prosecution for drug charges by providing information about other drug dealers. (T., pp. 230-233). Although this had been unsuccessful, [Appellant] contended this

evidence demonstrated that he knew that providing incriminating evidence about others could be used to negotiate a reduced sentence.

Prior to trial, [Appellant] had filed a notice of alibi defense pursuant to Pa.R.Crim.P. 573 in which Qwenda Reed, who was his girlfriend at the time, was identified as an alibi witness. The notice indicated that Reed would testify that during the late night hours of July 13, 2000 through the early morning hours of July 14, 2000, the time during which the Commonwealth contended [Appellant] was in the area of the Traveler's Club, [Appellant] was with Reed at their apartment celebrating their one year anniversary. Although there were indications during the trial that [Appellant] would call Reed to testify, [Appellant] rested after his testimony, without Reed being called to testify. [Appellant] was found guilty as set forth above and his conviction was affirmed by the Superior Court on February 11, 2013.

PCRA Court Opinion, 7/18/16, at 2-4 (footnote omitted).

The jury convicted Appellant on January 13, 2011. On March 28, 2011, the trial court sentenced him to an aggregate 424 to 848 months' incarceration. As the trial court's opinion notes, Appellant filed a direct appeal, and this Court affirmed the judgment of sentence on February 11, 2013. *Commonwealth v. Scales*, 68 A.3d 359 (Pa. Super. 2013) (unpublished memorandum). Appellant petitioned for allowance of appeal, which the Supreme Court denied on October 30, 2013. *Commonwealth v. Scales*, 79 A.3d 1098 (Pa. 2013).

- 3 -

On January 5, 2015, Appellant filed the PCRA petition that is now before us *pro se*.[1] The PCRA court appointed counsel, who filed an amended petition on April 6, 2015. The essence of Appellant's request for post-conviction relief is that trial counsel was ineffective for failing to call Qwenda Reed as an alibi witness at trial. On July 8, 2015, the Commonwealth filed an answer, indicating that an evidentiary hearing was warranted for the introduction of testimony and to create a record. The PCRA court convened a hearing on February 22, 2016. On February 23, 2016, it entered an order denying Appellant's petition. Appellant then filed this timely appeal, in which he presents the following three issues:

1. Did the PCRA court err or abuse its discretion in failing to grant Appellant a new trial based on a properly pled, preserved and supported IAC [ineffective assistance of counsel] claim involving trial counsel's failure to call alibi witness Qwenda Reed, who was known to trial counsel, ready, willing and available to testify at trial and where the failure of trial counsel to call the alibi witness was prejudicial to Appellant entitling him to relief?

2. Did the PCRA court err or abuse its discretion in dismissing the Amended PCRA Petition where Qwenda Reed, an alibi witness, would have been able to provide credible testimony,

---

[1] Appellant's petition was timely because it was filed within one year of his sentence becoming final. 42 Pa.C.S. § 9545(b)(1). Appellant's sentence became final on January 28, 2014, which was 90 days after the Pennsylvania Supreme Court's denial of his petition for allowance of appeal (the period of time that he had to petition for a writ of certiorari with the United States Supreme Court). 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. Rule 13.

supported by evidence of record, exculpatory in nature, that would exonerate Appellant in his involvement in the shooting outside of Traveler's Club in the early morning hours of July 14, 2000, thereby creating an issue of material fact which warrants Appellant a new trial?

3. Did the PCRA court err or abuse its discretion in dismissing Appellant's PCRA matter if the matter was dismissed as a result of the Court making a credibility determination regarding the alibi witness, Qwenda Reed, since Appellant has surmounted the prongs of a properly plead and supported IAC claim entitling him to a new trial where a jury would hear, weigh and assess the testimony and credibility of the available alibi witness?

Appellant's Brief at 5.

Appellant's three issues encompass one claim that trial counsel was ineffective for failing to call Qwenda Reed as an alibi witness at Appellant's trial.[2]  Preliminarily, we note our standard of review:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record.  We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it.  We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.  However, we afford no such deference to its legal conclusions.  Further, where the

_____

[2] At the PCRA hearing Appellant's counsel stated, "There's really one issue we have raised before the Court today involving an ineffectiveness of counsel claim. . . . It is an alibi witness. . . . It's Qwenda Reed[.]  That is the sole issue for today[.]"  N.T., 2/22/16, at 3.

petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

The law presumes trial counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on the petitioner. ***Id.*** To satisfy this burden, the petitioner must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of this test will result in rejection of the petitioner's ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002).

When claiming counsel's ineffectiveness for failure to call a potential witness, the PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Washington*, 927 A.2d 586, 599 (Pa. 2007). To demonstrate prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008); *see also Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense").

Instantly, three witnesses testified at the PCRA hearing: Kirsha Weyandt Trychta, who was Appellant's trial counsel; Qwenda Reed; and Appellant. Ms. Trychta testified to learning of Ms. Reed as a potential alibi witness from an "initial meeting" with Appellant. N.T., 2/22/16, at 6-7. Ms. Trychta hired a private investigator to meet with Ms. Reed, and the investigator secured a written statement from Ms. Reed. Thereafter, Ms. Trychta spoke with Ms. Reed and filed a notice of alibi. She recalled that Ms. Reed was present "by and large" for Appellant's trial and available to testify. *Id.* at 9, 12. Ms. Trychta stated that "[u]p until the very last minute, yes, we anticipated calling her." *Id.* She recalled:

> [Ms. Reed] was going to state that at the time the defendant is alleged to have engaged with a co-defendant, Sean Greene, to set up the homicide, that he was actually with her at their home. I believe she was quite pregnant at the time and it was a complicated pregnancy and she wanted him to stay there and take care of her. . . . The Commonwealth presented that Mr. Scales, although not the shooter, had to be near the scene of the

- 7 -

crime at the time that the homicide occurred. She would have testified that he was home with her at that time. . . . Her testimony would have been that it was for the entire evening, yes.

N.T., 2/22/16, at 11.

Ms. Trychta explained that Appellant testified at his trial, and after his testimony, she and Appellant discussed Ms. Reed and whether she would be called to testify. N.T., 2/22/16, at 14. She specifically testified that Appellant was involved in the decision. *Id.* at 15. She explained:

My recollection is that something happened towards the very end of the trial out in the hallway. I can't remember specifically what it was, but I believe she got cold feet or – Something happened, and Mr. Scales and she decided that would not be what they wanted to do anymore. . . . She went out in the hall. Her and I think [another potential alibi witness] was still here and maybe some family members of his as well, and then they came back in really flustered. . . . I don't know what happened in the hall but they came back in. . . . They were all worked up. . . . And at that point, I don't remember why, and then I remember something happened because I actually told the intern to then go stand in the hallway to just have someone there should future incidents occur. . . . And I believe once that happened, whatever it was at that point, either she refused to testify or Mr. Scales said, "Never mind. I don't want her to testify." There was some change in course of action at that point.

*Id.* at 16-18.

On re-direct, Ms. Trychta opined that Ms. Reed's testimony would have been helpful to Appellant. She also stated, "The jury's verdict was so bizarre that I could see it changing the jury's mind." N.T., 2/22/16, at 19. She said that not calling Ms. Reed "would have been a mutual decision we made

together, to the best of my recollection" and she did not believe she would have instructed Appellant not to call Ms. Reed. *Id.*

Qwenda Reed testified that she was willing to testify for Appellant at his trial in 2011 and is still willing to testify as an alibi witness. She expressly stated that on the night the offenses occurred, Appellant came home at 8 or 9 p.m. and was with her all night. N.T., 2/22/16, at 24-25, 31. Ms. Reed testified that the couple slept in the same room, and Appellant never left until the next morning. *Id.* at 24, 31. Ms. Reed attended Appellant's trial, and expected to be called as a witness. *Id.* at 29. She conceded that there was "a discussion" in the hallway, but said that she wanted to testify, and nothing happened to change her mind. *Id.* at 30. Ms. Reed did not know why Ms. Trychta did not call her to testify, saying, "his lawyer, all she said was my statements could only hurt him, and I didn't see how." *Id.* at 38.

On cross-examination, Ms. Reed acknowledged testifying at Appellant's sentencing hearing, and stating that she did not believe that Appellant was a murderer or committed the murder for which he was convicted. N.T., 2/22/16, at 34-36. Ms. Reed said she did not mention that Appellant had an alibi and was with her on the night of the murder because she "just gave a statement of how I felt. So, no, I wasn't a witness[.]" *Id.* at 36-37.

Appellant testified to living with Ms. Reed at the time of the murder. He estimated that on that night, he arrived home around 8:10 p.m. because

he worked until 8:00 p.m. at a nearby body shop. N.T., 2/22/16, at 43. He said he was there "all night long." *Id.* at 44. He added that he told Ms. Trychta in the middle of the trial to present Ms. Reed as an alibi witness, and Ms. Trychta "said she would." *Id.* Appellant denied that there was ever a discussion about not calling Ms. Reed. *Id.*

On cross-examination, Appellant conceded that he initiated contact with law enforcement regarding the murder and acknowledged that until he contacted law enforcement it was a "cold case." N.T., 2/22/16, at 46. He admitted that by initiating contact with law enforcement and confessing to the murder he had put himself in a bad situation. *Id.* at 48.

After considering the above testimony, the PCRA court denied Appellant's petition for post-conviction relief. The PCRA court referenced the three prong test for proving counsel's ineffectiveness by a preponderance of the evidence, as well as the applicable five prong test for a claim that counsel was ineffective for failing to call a witness at trial. *See Fulton*, 830 A.2d at 572; *Washington*, 927 at 599. The PCRA court then reasoned:

> In the present case there is not dispute that the witness existed, the witness was available to testify during the course of the trial and that trial counsel knew of the existence of the witness. Trial counsel credibly testified that she expected Reed to testify but that as a result of some incident or "discussion" in the hallway just prior to her testimony, [Appellant] made the decision that Reed would not testify. Reed acknowledged that there was a "discussion" of some kind but offered no explanation to what occurred. She testified she remained willing to testify as an alibi witness at trial but that trial counsel did not call her, stating only that her testimony would hurt [Appellant]'s case.

Interestingly, [Appellant] gives even less explanation as to why Reed did not testify. [Appellant] contends that in the middle of the trial he told trial counsel to present Reed's testimony and expected her to be called. [Appellant] denies that there was *any* discussion about not calling Reed to testify. However, [Appellant] offered absolutely no testimony as to what transpired between him and his trial counsel when he realized, during the trial, that Reed's testimony was not being presented. Trial counsel testified that [Appellant] was active in the presentation of his case and [Appellant] understood the criminal trial system enough to believe that he could possibly negotiate a reduction in his existing sentence by cooperating with the Commonwealth in prosecuting a crime. In fact, accepting [Appellant]'s defense, he was willing to concoct a scheme to implicate himself in a crime that he did not commit in order to make it appear that he had information that would be helpful to the Commonwealth. Yet [Appellant] offers no testimony about what happened when he realized that counsel was not presenting Reed's testimony. [Appellant] now simply asserts that when his trial counsel suddenly decided not to call what he believed to be a key alibi witness, there was no discussion with his counsel as to why the witness was not called. [Appellant]'s testimony at the PCRA hearing lacks credibility as it offers no explanation whatsoever as to what occurred between him and his counsel when Reed did not testify when she was in the courthouse and allegedly ready to testify. By comparison, trial counsel's testimony is credible that after [Appellant]'s testimony she discussed with him whether or not to call Reed. While trial counsel was unable to specifically identify what occurred, she was certain that "something happened" and [Appellant] and Reed determined that she did not want to testify. Trial counsel credibly testified that she conferred with [Appellant] and [Appellant] ultimately told her, "Never mind. I don't want her to testify." Therefore, there is no evidence that the fact that Reed did not testify was the result of any ineffectiveness of trial counsel.

[Appellant] has also failed to establish that he was prejudiced by the fact that Reed did not testify. In order to be entitled to relief [Appellant] must establish that the absence of the testimony of the witness was so prejudicial as to have denied him a fair trial. [Appellant]'s recorded confession unequivocally implicated him in the shooting. It is highly unlikely that the presentation of his girlfriend's testimony that he was with her on

- 11 -

the night of the murder, without other substantial corroborating evidence, would have affected the outcome of the trial. Therefore, [Appellant]'s PCRA petition was appropriately dismissed.

PCRA Court Opinion, 7/18/16, at 9-10.

Upon review, we find that the PCRA court's denial of Appellant's petition is supported by the record. It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court as long as they are supported by the record. *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014). Therefore, we are bound by the PCRA court's determination that Ms. Trychta was credible and Ms. Reed and Appellant were not. Because Ms. Trychta testified that Appellant indicated to her toward the end of the trial that he did not want Ms. Reed to testify, we find from our *de novo* review that the record supports the legal conclusion that Appellant did not meet the first or second prongs of the tripartite test for ineffectiveness because Appellant's claim was not of arguable merit and Ms. Trychta's course of conduct in not calling Ms. Reed to testify evidenced a reasonable basis designed to effectuate Appellant's interests. *Fulton*, 830 A.2d at 572.

We recognize Ms. Trychta's testimony that Ms. Reed's alibi testimony would have been helpful to Appellant. N.T., 2/22/16, at 19. However, failure to satisfy any prong of the tripartite test will result in rejection of Appellant's ineffective assistance of counsel claim. *Jones*, 811 A.2d at

1002. Therefore, because of our conclusion regarding the first and second prongs of the ineffectiveness test, the third prong of the test for ineffectiveness (prejudice) does not impact our disposition.

Based on the foregoing, we defer to the PCRA court's credibility findings, particularly Ms. Trychta's testimony that not calling Ms. Reed "would have been a mutual decision . . . made together" with Appellant, and her belief that she would not have advised Appellant not to call Ms. Reed as an alibi witness. N.T., 2/22/16, at 19. In doing so, we make the legal conclusion that Appellant failed to demonstrate trial counsel's ineffectiveness by a preponderance of the evidence. Accordingly, we affirm the PCRA court's denial of Appellant's claim for post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2017