J-S06044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRENCE BUTLER | : | No. 1187 EDA 2017 |

Appeal from the PCRA Order March 30, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001837-2013,
CP-51-CR-0001838-2013, CP-51-CR-0001839-2013

BEFORE: BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

DISSENTING MEMORANDUM BY BOWES, J.: **FILED SEPTEMBER 14, 2018**

I respectfully dissent, as I would find that Appellee failed to rebut the presumption of effectiveness. Although Appellee asserted that trial counsel, Susan Buck, Esquire, ineffectively failed to object to prejudicial testimony, a review of the record establishes that her inaction was a reasonable strategic choice designed to bolster the overall defense strategy. Since counsel was constitutionally effective, the PCRA court erred by granting relief. Additionally, I would find that Appellee was not prejudiced as he failed to establish a reasonable probability that the outcome of the proceeding would have changed had counsel objected. I would therefore reverse the award of a new trial.

On October 21, 2012, a vehicle with two occupants was stopped by Philadelphia Police Officer George Dilworth for a minor traffic violation. Officer

Dilworth testified that the driver, whom he identified as Appellee, complied with his request for a driver's license, insurance, and vehicle registration, which listed Appellee as the owner. Officer Dilworth returned to his police vehicle to run a standard criminal background check, the results of which caused him to request backup.[1] Officer Eric Romanczuk arrived shortly thereafter and went to the passenger side of the vehicle, while Officer Dilworth approached Appellee. In response to Officer Dilworth's request that he step out of his vehicle, Appellee put the car into drive and accelerated. Officer Dilworth did not have the chance to return Appellee's documents, including his license.

The two officers went to their respective vehicles and chased Appellee, who crashed into a car, leading to various injuries to its three occupants. Both cars were disabled by the crash, but by the time the officers arrived the occupants of Appellee's vehicle were gone. Officer Dilworth attended to the medical needs of the injured citizens, and radioed a flash description of the fleeing individuals. The officer testified that he could not recall exactly what he stated, "but I did give the description for both males." N.T. Vol. I, 12/17/14, at 74.

Officer Dennis Cary testified that he was responding to the crash scene when Officer Dilworth's description was transmitted. After surveying the area

---

[1] Appellee had an arrest warrant for rape, which the judge ruled pre-trial was inadmissible. This point becomes relevant to the ineffective assistance of counsel claim, as discussed in the body *infra*.

for approximately ten to fifteen minutes, he noticed a man boarding a bus. The man was wearing a white hooded sweatshirt with black sweatpants, which matched the flash description. Officers Cary and Dilworth boarded the bus, and Officer Dilworth identified the man, Shawn Kennedy, as the passenger in the vehicle he had stopped earlier. Officer Cary arrested Kennedy and transported him to the police station. Appellee was arrested approximately one month later.

Detective Francis McClain interviewed Officer Dilworth that evening, who informed him that Kennedy was the passenger. Officer Dilworth also turned over Appellee's driving license and other documentation, and identified him as the driver. Additionally, Detective McClain interviewed Kennedy, who provided a statement to police on the night of the incident; the detective's testimony regarding that statement provided the basis for the PCRA's grant of a new trial, as counsel did not object to the following exchange:

Q. Detective, you mentioned that Officer Dilworth was interviewed. Were you present for that interview?

A. Yes.

Q. Was Shawn Kennedy or any other person involved in this case present for that interview?

A. No. He was in the interview room.

. . . .

Q. You mentioned Shawn Kennedy. How did you come into contact with Shawn Kennedy?

A. One of the officers had located him getting on a SEPTA bus and they transported him to Central Detectives.

- 3 -

Q. Did you have the opportunity to interview him as a result of this investigation?

A. Yes. On the same day of the incident, I interviewed him. He corroborated everything Officer Dilworth said.

    . . . .

Q. Detective, you mentioned that Shawn Kennedy, his statement, it corroborated or cooperated [*sic*] Officer Dilworth's?

A. **Everything Officer Dilworth said was the same as the statement taken from Shawn Kennedy**.

N.T. Vol. II, 12/18/14, at 43-45 (emphasis added).

As emphasized, Detective McClain's recitation of Kennedy's statement provided the jury with another witness who placed Appellee in the driver's seat. Appellee's PCRA petition alleged that the failure to object was ineffective because mistaken identification was his entire defense.

That is indisputable, as counsel's opening informed the jury that Appellee was not present. "Now there is no question that on the night of October 21, 2012, these people were injured . . . the problem is, is that my client wasn't driving. He wasn't even there." N.T. Vol. I, 12/17/14, at 32. Counsel argued that Kennedy took Appellee's vehicle and documentation, and that Officer Dilworth's in-court identification was unreliable because it was based on those documents.[2] *Id*. at 76 ("And let's be honest; the only reason

_____

[2] Counsel added that Kennedy and Appellee were similar in appearance. N.T., Vol. I, 12/17/14, at 33.

- 4 -

you are identifying my client at all throughout this whole process is because you have his license in your hand; right?"). Relatedly, counsel suggested that the officers did not sufficiently observe the driver, given that the traffic stop was unremarkable until the driver fled. Therefore, the officers had little reason to remember the physical appearance of the driver.

Yet mistaken identification was not the entire defense, and counsel suggested that something more sinister may have occurred. "Whether [the misidentification] was a result of an honest human error or whether it was a result of a vindictive motive, I don't know; you will be the judge of that." *Id*. at 32. As it turned out, Kennedy was the son of a Philadelphia Police Inspector, and while Kennedy was arrested on the evening of the crash, he was released. Counsel suggested that the officers covered for their colleague's son by implicating Appellee, who represented an easy target, given they had Appellee's license and vehicle. For instance, during his cross-examination, Officer Cary agreed that "[Kennedy] wanted to get out of this[.]" Counsel then asked, "And that is why you guys let him go?" *Id*. at 136. On cross-examination of Detective McClain, counsel asked if he placed a call to Inspector Horn, which he denied. N.T. Vol. II, 12/18/14, at 47. Unsurprisingly, these themes appeared in counsel's closing argument:

> I submit to you that Shawn Kennedy is the guy who should be sitting in that chair today. Shawn Kennedy borrowed my client's car, got pulled over my [*sic*] Officer Dilworth, gives my client's license, takes off. We know that he was driving because Officer Dilworth at the time puts out flash information for the guy he wants to find, the driver, the guy who he had just spoken to.

*Id*. at 120.  Counsel later remarked, "[T]hey let Shawn Kennedy go . . . because his dad is one of them.  He is a police officer.  You got to cover up for a police officer's son and they got somebody else to pin it on, so they don't need Shawn Kennedy[.]" *Id*. at 125.

Since trial counsel suggested that the officers conspired to cover for their colleague and his son, I agree with the Commonwealth that counsel had a reasonable strategic basis for failing to object to the aforementioned testimony.  "[Counsel] believed Kennedy's statement was useful to advance her theory that the police had fabricated [Appellee]'s role in the crime." Commonwealth's brief at 13.

The PCRA court, however, disagreed and granted a new trial based on this failure to object.  "Our standard of review for issues arising from the denial of PCRA relief is well-settled.  We must determine whether the PCRA court's ruling is supported by the record and free of legal error." ***Commonwealth v. Spotz***, 171 A.3d 675, 678 (Pa. 2017) (citing ***Commonwealth v. Washington***, 927 A.2d 586, 593 (Pa. 2007)).  "The PCRA court's credibility determinations are binding on this Court when they are supported by the record.  However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Rivera-Rodriguez***, 39 A.3d 439, 441 (Pa.Super. 2012) (citing ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011)).  Counsel is presumed effective, and Appellee bore the

burden of establishing otherwise. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa.Super. 2010) (citation omitted).

> To satisfy this burden, [petitioner] must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Fulton***, 574 Pa. 282, 830 A.2d 567, 572 (2003). Failure to satisfy any prong of the test will result in rejection of the [petitioner]'s ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 571 Pa. 112, 811 A.2d 994, 1002 (2002).

***Commonwealth v. Smith***, 167 A.3d 782, 787–88 (Pa.Super. 2017).

I find that the PCRA court's legal conclusion regarding the second prong was erroneous. At this juncture, I set forth counsel's reason for not objecting, as testified to at the PCRA hearing:

> A. So do you want to go back to the original, one of the first questions you asked. Why I didn't object to him saying that what Dillworth corroborated --
>
> Q. Yes.
>
> A. -- everything Shawn Kennedy had to say?
>
> Q. Yes.
>
> A. Well, first of all, because he didn't ask a specific question like, you know, isn't it true that he corroborated that Mr. Butler was driving. I didn't want to highlight it for the jury, but also, and I had a chance to reread this, **I wanted Shawn Kennedy's statement to come in. It would be helpful for my client if the jury would hear everything that Shawn Kennedy actually said in his statement**.
>
> So if you look on Page 49 or I guess when I start my cross, I ask for a sidebar, so I can go into specific detail with the Judge and

- 7 -

the DA about why I wanted to use the statement and why I thought it wasn't hearsay, the portions I wanted to use. And because that opened up the door for my client's rape warrant, I choose not to go into those details. So that's why I didn't object this time because I wanted to use it.

Q. So you thought that the statement of Mr. Kennedy was beneficial to your defense?

A. Parts of it, yeah.

N.T. PCRA Hearing, 1/13/17, at 13-14 (emphasis added).

The PCRA court's opinion largely responds to the Commonwealth's averment that there was no arguable merit to any hearsay objection.[3] With respect to the remaining two prongs, this is the sum of its analysis:

> A blatant statement by Detective McClain that Kennedy's statement exactly corroborated Officer Dilworth's is not admissible. Likewise, counsel's stated reasons for not objecting is [*sic*] not valid. That it was Shawn Kennedy, and not her client, who was the driver of the vehicle was the core of counsel's defense. **Under these circumstances, this court cannot accept trial counsel's expressed reasons for failing to object to the harmful hearsay statements of Detective McClain.**
>
> . . . .
>
> Counsel admitted to not objecting to the testimony of Detective McClain wherein he, three times, told the jury that Shawn Kennedy's statement corroborated Officer Dilworth's. The entirety

---

[3] The Commonwealth continues to assert that there was no arguable merit to any objection because the testimony was not hearsay. The Commonwealth maintains that the statement was relevant to course of conduct, *i.e.*, it explained why Detective McClain let Kennedy go that evening. This position imagines that counsel objected to the testimony, but the trial court then instructed the jury that the statement could be used for a limited purpose. Obviously, that did not occur, and I fully agree with the Majority that there was arguable merit to the ineffectiveness claim.

of the defense was that Shawn Kennedy was the driver of the vehicle and that Mr. Kennedy was released from custody because his father was a high ranking police official. For counsel to have allowed the testimony from Detective McClain, that Kennedy's statement corroborated Officer Dilworth's was without sound, informed and reasonable strategy or tactic, and there is a reasonable probability, that but for counsel's ineffectiveness the outcome very well could have been different.

PCRA Court Opinion, 8/29/17, at 7-8 (citation omitted).

My colleagues accept the PCRA court's conclusion that counsel's desire to introduce Kennedy's statement was not a reasonable strategic decision, which is apparently based on a deference to credibility findings:

Additionally, we emphasize that the PCRA court did *not* credit counsel's testimony that she had a reasonable basis for not objecting to the hearsay testimony regarding Kennedy's statement:

[C]ounsel's stated reasons for not objecting [are] not valid. That it was [] Kennedy, and not her client, who was the driver of the vehicle was the core of counsel's defense. Under these circumstances, this court cannot accept trial counsel's expressed reasons for failing to object to the harmful hearsay statements of Detective McClain.

Majority Memorandum at 5 (quoting opinion). I submit that this analysis misapprehends the reasonable strategic basis test, which is a conclusion of law that we review *de novo*. The Majority claims that the PCRA court "did *not* credit counsel's testimony that she had a reasonable basis for not objecting" to Detective McClain's testimony. However, the pertinent legal question is

whether the proffered explanation was or was not a reasonable strategic decision, which does not turn upon credibility.[4]

I do not suggest that credibility is irrelevant with respect to strategic choices. However, in this particular situation, counsel's explanation at the PCRA hearing for her inaction is consistent with everything that occurred at trial. Therefore, had the PCRA court resolved this question as a matter of credibility, *i.e.* that counsel was not truthful when she explained that her failure to object was a strategic choice, those findings would not be supported by the record. It would be rather remarkable to conclude as a matter of credibility that trial counsel did not want Kennedy's statement to come in when the trial transcript disproves that point. As trial counsel said at the evidentiary hearing, she tried to introduce more portions of the statement beyond what the Commonwealth introduced. I now quote the relevant portion of counsel's cross-examination of Detective McClain at trial:

Q. Now you said you took a statement of Shawn Kennedy that night?

A. Correct.

MS. BUCK: Actually, can we see you at sidebar.

THE COURT: Yes.

---

[4] In other words, whether counsel believed that her strategy was a reasonable strategic decision is irrelevant. Indeed, the presumption of effectiveness demands that we view an attorney's decision as strategic. The test does not ask us to credit or discredit whether counsel thought she had a reasonable basis to object, nor does our standard of review require us to defer to the PCRA court's opinion on that question.

(Sidebar discussion was held.)

(Discussion in chambers as follows:)

THE COURT: We are out of the presence of the jury. Ms. Buck, you have an objection to the proposed –

MS. BUCK: Well, I mean, obviously, I don't want to open the door to that, but I think it does.

THE COURT: For the record, Ms. Buck has asked whether she is allowed to inquire into the, ask the detective specifically the wording of the witness Shawn Kennedy in a statement. Mr. Kennedy has not been presented in court and I will let you put your reasons on the record.

MS. BUCK: I wanted to use it for the purpose of not the truth, that it is the opposite, **that the words used were fed to him by police officers, if not totally written by police officers**, and that the fact that he denies seeing any weapons or narcotics and then goes on to say that when he identifies my client as the driver, he puts gun not mine underneath it, which I think is relevant to show or I think it is not hearsay because I think it shows his knowledge of a gun in the car, that only somebody who is guilty would know. I mean –

THE COURT: Mr. Krouse.

MR. KROUSE: Your Honor, I would object. This is exactly what hearsay is. Mr. Kennedy is not here; it is not for a lack of due diligence from the Commonwealth. . . . .

Additionally, if counsel is permitted to ask a question about how the idea of a gun came up, then I believe that that would open the door for me on redirect to ask questions about why they chose to ask about a gun and why they chose to or whatever. I mean, obviously, it depends on the detective's answer to that question, but the fact that there was an open rape warrant and, again, I am not bringing up his prior convictions, I absolutely understand that is not allowed, but that also could factor into why, but I can obviously speak with my detective to make sure it didn't come up, but it was rape by handgun and that was, he was potentially armed and dangerous, that was the warrant, and I have a copy of

the warrant, of the actual warrant to show when it was issued, and then the detectives would testify to what they knew and I could also recall Officer Dilworth or Officer Romanczuk to testify to their knowledge of that open warrant and that he was considered armed and dangerous and that would be why they asked about the gun to Shawn Kennedy, to see if he had any knowledge of it.

N.T. Vol. II, 12/18/14, at 48-51 (emphasis added).[5] The trial court ruled that questioning could "open the door as to the reason a warrant was obtained or, and the reason for the stop[.]" *Id*. at 51.

The fact that counsel was limited from introducing other portions of Kennedy's statement does not detract from the strategic validity in declining to object to the portions the Commonwealth introduced. I find that counsel's reason for not objecting was a strategic choice designed to advance the overall strategy. Appellee therefore failed to establish ineffective assistance of counsel. Counsel explicitly stated at trial that she wished to establish that

---

[5] The Commonwealth's position at trial that Kennedy's statement was hearsay when introduced by the defense undermines its current position that it was not hearsay for purposes of the arguable merit prong. Just like the Commonwealth, trial counsel sought to use the statement for a purpose other than truth, since Kennedy implicated Appellee in the crimes.

Furthermore, the Commonwealth's position that Kennedy's knowledge of the gun was relevant to whether Appellee was armed and dangerous could equally be used to establish that the Commonwealth was, in fact, treating Kennedy favorably. Kennedy's knowledge of the gun's whereabouts raises the specter of constructive possession of the firearm. In this respect, Kennedy's knowledge supplies an additional motivation for him to lie and implicate Appellee, which is precisely what counsel sought to establish.

- 12 -

Kennedy's words were "fed to him" by the police and her explanation at the PCRA hearing for her failure to object is consistent with that strategy.

The PCRA court, in contrast, focuses on the mistaken identification defense without recognizing that Kennedy's statement did not necessarily undermine the defense. That strategic choice was doubtlessly valid. "Counsel will not be deemed ineffective where the strategy employed had some reasonable basis designed to effectuate his or her client's interests." *Commonwealth v. Perry*, 128 A.3d 1285, 1290 (Pa.Super. 2015) (citation omitted). Trial counsel's decision was clearly designed to effectuate Appellee's interests, and the fact that the PCRA court appears to disagree with her decision does not establish ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way

Furthermore, the PCRA court appears to opine that an objection was necessary simply because Kennedy identified Appellee as the driver. That conclusion fails to consider that Kennedy clearly had a motive to lie if, in fact, he was the driver as trial counsel argued. Counsel did not care if the jury heard that Kennedy implicated Appellee, because under Appellee's theory of the case, Kennedy was a corrupt source. "The other guy did it" is perhaps the most common defense of all. The PCRA court, for whatever reason, appears to believe that the jury would blindly accept Kennedy's statement as true in

the absence of an immediate objection.  Counsel was entitled to weigh that risk, especially in the heat of the moment when she had to make a quick decision.

> [Our Supreme] Court has recognized that counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Freeland*, 106 A.3d 768, 776 (Pa.Super. 2014) (citation omitted).  For the foregoing reasons, I find that Appellee failed to establish counsel's ineffectiveness.

Additionally, even if counsel's strategy was unreasonable, I would find Appellee failed to establish that he was prejudiced.  Appellee must show that

> there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. A failure to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim.

*Commonwealth v. Collins*, 957 A.2d 237, 244 (Pa. 2008) (citation omitted).

These circumstances concern the outcome of trial.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (*per*

- 14 -

*curiam*) (quotation marks and citation omitted). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test[.]" **Strickland**, **supra** at 693 (citation omitted).

Appellee has failed to establish a reasonable probability that the outcome of trial would have been different but for the failure to object. In **Commonwealth v. Gibson**, 951 A.2d 1110, 1142 (Pa. 2008), Gibson asserted, *inter alia*, that counsel rendered ineffective assistance by failing to request a jury instruction "that his statement to the police could only be considered against him if it had been given voluntarily." Our Supreme Court concluded that Gibson was not prejudiced by any failure to do so for these reasons:

> In any event, it is also clear that, as the PCRA court concluded, [Gibson] has not demonstrated prejudice arising out of the absence of a voluntary statement instruction. The purport of [Gibson]'s presentation was that his statement was untrue as it was coerced, and the jurors were free to accept this proposition had they credited [Gibson]'s evidence. Even if the jury had disregarded [Gibson]'s confession in its entirety in light of his evidence, given the extent of the evidence demonstrating his guilt, including eyewitness testimony correlated with the physical evidence, there is no reasonable probability that the outcome of [Gibson]'s trial would have been different.

*Id*. at 1143 (citations omitted).

That same logic applies herein. The jury was free to accept counsel's theory that Kennedy was the true culprit, and, as set forth *supra*, Kennedy's statement implicating Appellee was consistent with the defense version of

events. Nor did the jury have to credit Kennedy's statement in order to find Appellee guilty, as two police officers identified Appellee as the driver. The police had Appellee's driver's license, registration, and his vehicle. Additionally, Officer Dilworth testified that he immediately identified Kennedy as the passenger when Kennedy was apprehended by Officer Cary. Therefore, the evidence of Appellee's guilt is overwhelming, and Appellee's conspiracy theory does not supply a conceivable basis to say otherwise even if counsel's strategy was ineffective, which it was not. I therefore respectfully dissent.