J-S10018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN SHANE SHATZER | : | |
| | : | |
| Appellant | : | No. 838 MDA 2024 |

Appeal from the Order Entered May 14, 2024
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0000706-2018


BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 05, 2025**

Appellant, Brian Shane Shatzer, appeals *pro se* from the May 14, 2024 order that dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.  We affirm.

A panel of this Court previously summarized the facts and procedural history of this case as follows.

> In the early morning hours of September 6, 2017, police responded to a home in Waynesboro, Pennsylvania, based on a report of a possible drug overdose. Upon arriving, police discovered Samuel Myerly (the "Decedent") in an upstairs bedroom in a state of cardiac arrest.  The officers found evidence of recent drug use on the Decedent's person.  The Decedent was later pronounced dead at a nearby hospital, and a medical examination after his death determined that he suffered a fatal overdose.
>
> Police interviewed several witnesses, including the resident of the home at which the Decedent overdosed and two individuals who had been with the Decedent prior to the Decedent's overdose.  Police also interviewed [Appellant's] roommate, who told police that he observed [Appellant] sell the Decedent

narcotics shortly before he died. A later review of messages on the Decedent's cell[ular tele]phone disclosed [tele]phone calls and text messages between the Decedent and [Appellant] on the night of the overdose, as well as several text messages between [Appellant] and the Decedent in the days prior to the overdose, wherein the parties discussed [Appellant] selling the Decedent narcotics.

Based upon the foregoing, [Appellant] was arrested and charged, on January 26, 2018, with drug delivery resulting in death. … A jury subsequently convicted [Appellant] of the above-mentioned offense. … On November 20, 2019, the trial court sentenced [Appellant] to 114 to [240] months in prison, with credit for time served.

*Commonwealth v. Shatzer*, 241 A.3d 428, *1 (Pa. Super. 2020) (non-precedential decision), *appeal denied*, 284 A.3d 116 (Pa. 2022). This Court affirmed Appellant's judgment of sentence on October 15, 2020. *Id.*

Thereafter,

On October 18, 2021, [Appellant] filed a *pro se* PCRA petition. On October 22, 2021, [the PCRA court] appointed [] Michael Palermo[, Esquire to represent Appellant] and [further] directed that [Attorney Palermo] file an amended [PCRA] petition [on Appellant's behalf] within 45 days[.] … On February 18, 2022, [the PCRA court] received [Appellant's] amended petition[.]

[Appellant's] amended petition raised nine claims of ineffective assistance of counsel, including an allegation that trial counsel failed to adequately notify [Appellant] of his right to file a petition for allowance of appeal with the Pennsylvania Supreme Court. A hearing was held on April 4, 2022, where the parties agreed that [Appellant] should be allowed to file a petition for allowance of appeal to the Pennsylvania Supreme Court *nunc pro tunc*. The petition was filed, however, the Pennsylvania Supreme Court denied it on April 23, 2022. [**See** *Commonwealth v. Shatzer*, 284 A.3d 116 (Pa. 2022).]

[Ultimately, the PCRA court] recognized that the balance of [Appellant's] PCRA claims were still outstanding and scheduled an evidentiary hearing for January 17, 2023. On January 5, 2023, [Appellant] requested new counsel, which [the PCRA

court] addressed at [a] hearing on January 17, 2023. At the hearing[, Appellant] clearly indicated his desire to proceed with the assistance of Attorney Palermo, so [the PCRA court] granted [Appellant] 30 days to talk with Attorney Palermo and allow[ed] counsel to file [a second] amended [PCRA] petition, if necessary. On June 14, 2023, Attorney Palermo filed a motion to withdraw[, noting] that he was permitted to withdraw as counsel for [Appellant] in two other criminal matters. [The PCRA court] granted Attorney Palermo's motion that same day and appointed [] Mark Bayley[, Esquire,] to represent [Appellant] on his remaining claims.

On September 12, 2023, Attorney Bayley filed a motion requesting a hearing on the eight remaining claims in [the petition Appellant originally filed on February 18, 2022. … The PCRA court convened a hearing on Appellant's petition on November 20, 2023.] After hearing testimony by [Appellant,] and exhausting the time allotted, [the PCRA court] scheduled an additional hearing for January 18, 2024, to hear the testimony of [Appellant's trial counsel, Stephen Kulla, Esquire]. At the conclusion of the January 18, 2024 hearing, the [PCRA court] directed that transcripts be produced and directed Attorney Bayley to file an advocate's brief or a [no-merit] letter pursuant to *Turner/Finely*[1] within 30 days of receipt of the transcript. Attorney Bayley filed a timely [no-merit] letter and motion to withdraw on March 8, 2024.

On April 24, 2024, while [the PCRA court] was still reviewing the [no-merit] letter, [it] received correspondence from [Appellant] asking that [the court] remove Attorney Bayley as counsel and allow [Appellant] to proceed *pro se*. By order [dated] April 30, 2024, [the PCRA court] declined to rule on [Appellant's] *pro se* motion to allow [the court] an opportunity to rule on [Attorney Bayley's] motion to withdraw and accompanying [no-merit] letter. [The PCRA court] did so recognizing that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (emphasis [omitted]).

---

[1] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *see also Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1998).

On March 14, 2024, [the PCRA court] granted Attorney Bayley's motion to withdraw and dismissed [Appellant's] PCRA petition. On June 6, 2024, [Appellant] filed a notice of appeal and a motion requesting a *Grazier*[2] hearing or the appointment of new counsel. On June 11, 2024, [the PCRA court] denied [Appellant's] motion because he was not entitled to new counsel and was required to proceed *pro se* once counsel was allowed to withdraw. That same da[y, the PCRA court] ordered [Appellant] to file a concise statement of errors complained of on appeal within 21 days [pursuant to Pa.R.A.P. 1925(b)]. [Appellant timely complied].

PCRA Court Opinion, 7/18/24, at 2-4 (unnecessary capitalization and footnotes omitted) (footnotes added).

Appellant raises the following issues for our consideration.

1. Did the PCRA court err[] and abuse its discretion by denying [] Appellant PCRA relief?

2. Did the PCRA court commit an error of law in determining that no *Brady*[3] violation occurred with the withholding of exculpatory information from the grand jury testimony of Heather Myers?

3. Was [Appellant's] trial [counsel] ineffective for not properly vetting the "expert" witness and allowing him to present damaging evidence that included an erroneous evaluation of the toxicology report?

4. [Are] the findings of fact by the PCRA court that [] Appellant was seen by two witnesses with the [Decedent] the day he died and also [that Appellant] admitted during recorded phone calls that [he] was with [the Decedent on] the day he died supported by the record?

5. Once viewed in the proper form and context, does enough evidence exist in the certified record to warrant relief under the PCRA?

---

[2] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[3] *See Brady v. Maryland*, 373 U.S. 83 (1963).

6. Does a cumulative analysis of the evidence show that prejudice occurred due to ineffectiveness of [trial counsel]?

7. Did the PCRA court show prejudice by not allowing [] Appellant to present evidence around the "but for" cause of death?

8. Was [Appellant's] trial [counsel] ineffective for not building the case around the claim that [] Appellant never saw the [Decedent] on the day he died?

9. Was [] PCRA [counsel] ineffective for failing to amend [Appellant's] PCRA petition and [to] construct [a PCRA] petition [centered] on the claim that [] Appellant never saw the [Decedent] the day he died and [for failing to assert claims in Appellant's petition that would secure merits review]?

10. [Was PCRA counsel ineffective in failing to pursue a claim alleging that trial and direct appeal counsel were ineffective in failing to assert that] Fentanyl, not Oxycodone and/or Cocaine, [] was the "but for" cause of [the Decedent's] death?

Appellant's Brief at 3-4 (unnecessary capitalization omitted).[4]

Our standard of review is as follows:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions[.]

_____

[4] We have reorganized Appellant's claims for ease of discussion and disposition.

*Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations omitted).

In his first seven issues, Appellant raises various claims, including errors allegedly committed by his trial counsel or the PCRA court. On appeal, however, Appellant neither addresses nor develops these first seven claims. *See* Appellant's Brief. It is well-settled that the failure to develop a claim on appeal results in waiver under Pa.R.A.P. 2119. *See Commonwealth v. Taylor*, 277 A.3d 577, 591 (Pa. Super. 2022) (citation omitted) ("When issues are not properly raised and developed in briefs, or when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof."). Because Appellant failed to develop or even address the first seven appellate issues in his appellate brief, these claims are waived.

In his eighth issue, Appellant raises a claim of ineffective assistance of trial counsel. More specifically, Appellant contends that trial counsel did not sufficiently highlight Appellant's lack of contact with Decedent on the day of his death and, for this reason, Appellant claims that it was never properly established that Appellant supplied the drugs that caused Decedent's death. Appellant's claim fails.

"[C]ounsel is presumed effective, and [the appellant] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (citation omitted). To prevail on an ineffectiveness claim, an appellant must establish:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Lesko*, 15 A.3d 345, 373 (Pa. 2011) (citation omitted).

A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003).

At the January 18, 2024 hearing, Attorney Kulla indicated that, in contrast to Appellant's claims, there was "clear[] evidence that [Appellant]

- 7 -

had met with [Decedent]" the day Decedent died. N.T. Hearing, 1/18/24, at 34. The PCRA court summarized the relevant evidence as follows.

> At trial, the Commonwealth presented two witnesses who testified that they saw [the Decedent] with [Appellant] on September 5 or 6, 2017. The jury heard from Heather Myers ("Myers"), [Appellant's] ex-girlfriend. On September 5, 2017, Myers and [Appellant] lived together in an apartment in the Wayne Building in Waynesboro, Franklin County. Myers testified that around 10:00 p.m. on September 5, 2017, she saw [the Decedent] and [Appellant] "smoking crack" and saw [the Decedent] "snorting pills" he got from [Appellant]. According to Myers, [the Decedent] left after about an hour, but then returned around 2:00 a.m. on September 6, 2017 to buy more pills. Myers testified that [the Decedent] came to the apartment, "bought two pills, gave [Appellant] the money, he gave him the pills. [The Decedent] snorted one pill on a black plate and took the other one with him and then he did a hit of crack that [Appellant] gave him."
>
> The jury also heard from Paul Hale, a friend of [the Decedent]. Hale testified he took [the Decedent] to the Wayne Building between 8:00 p.m. and 9:00 p.m. on September 5, 2017. Additionally, during trial[,] the Commonwealth played an excerpt of a phone call made by [Appellant] while incarcerated in the Franklin County Jail wherein he admitted that he met with [the Decedent].

PCRA Court Opinion, 5/14/24, at 9-10 (internal citations omitted). Based upon the foregoing, Attorney Kulla determined that any attempt to persuade the jury that evidence of contact between Appellant and the Decedent was "fabricated" would not garner success. N.T. Hearing, 1/18/24, at 35. We cannot say that Attorney Kulla's assessment lacked a reasonable strategic basis. Thus, Appellant's claim fails.

We now turn to Appellant's remaining issues, which involve layered claims of ineffective assistance of counsel that target – for the first time

pursuant to **Bradley**, **supra** – the alleged failure of PCRA counsel to challenge the performance of trial and direct appeal counsel. In his ninth issue, Appellant argues that PCRA counsel was ineffective in failing to sufficiently challenge trial counsel's inadequate development of Appellant's claim that he did not have contact with Decedent on the day of his death. In his tenth issue, Appellant contends that PCRA counsel provided ineffective assistance because he failed to allege, by way of amended PCRA petition or otherwise, that trial and direct appeal counsel were ineffective in failing to assert that Decedent's death was caused by something other than a lethal dose of Oxycodone or Cocaine. We will address each of Appellant's claims in turn.

In **Bradley**, our Supreme Court opined "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **See Bradley**, 261 A.3d at 401 (footnote omitted). The **Bradley** Court further determined:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

\* \* \*

> Specifically, an appellate court will not be tasked with developing the record or acting as a court of original jurisdiction. Rather, appellate courts will have the ability to grant or deny relief on straightforward claims, as well as the power to remand to the PCRA court for the development of the record.

*Id.* at 402 (internal quotations and citations omitted). Moreover, the **Bradley** Court determined Pa.R.A.P. 302(a), which provides that issues cannot be raised for the first time on appeal, does not pertain to claims of PCRA counsel ineffectiveness. *Id.* at 404-405. Here, Appellant raised and preserved his layered claims of the ineffective assistance by raising these issues at the first opportunity to do so, specifically in his *pro se* 1925(b) statement and his brief filed with this Court on appeal. **See** Appellant's *Pro Se* Rule 1925(b) Statement, 6/11/24, at ¶¶ 3 and 7.

This Court has recently determined:

> To be eligible for relief on layered claims of ineffective assistance of counsel, a petitioner must plead and prove that: (1) trial counsel was ineffective for a certain action or failure to act; and (2) subsequent counsel was ineffective for failing to raise trial counsel's ineffectiveness. As to each relevant layer of representation, a petitioner must meet all three prongs of the [] test for ineffectiveness. A failure to satisfy any of the three prongs [] requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of subsequent counsel.

> Thus, if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of subsequent counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the [ineffectiveness] test, *i.e.*, the reasonable basis and prejudice prongs as applied to subsequent counsel.

- 10 -

*Commonwealth v. Dickerson*, 2024 WL 3372629, at \*3 (Pa. Super. 2024) (non-precedential decision) (internal citations, quotations, and original brackets omitted).[5]

We first turn to Appellant's ninth appellate issue, wherein he alleges that PCRA counsel was ineffective in failing to sufficiently challenge trial counsel's supposed failure to adequately develop Appellant's lack of contact with the Decedent on the day of his death. As indicated above, trial counsel was not ineffective on this basis. Hence, Appellant's layered clam challenging the performance of PCRA counsel also fails.

We now turn to Appellant's claim that PCRA counsel was ineffective in failing to allege that both trial and direct appeal counsel failed to adequately dispute Decedent's cause of death.[6] Appellant points to the fact that, during trial, it was established that Decedent had the following substances in his system at the time of his death: Alprazolam, Cocaine, Hydrocodone, Oxycodone, and Fentanyl. Appellant's Brief at 13. Because Appellant was only accused of supplying "two of those drugs," *i.e.*, Oxycodone and Cocaine,

---

[5] **See** Pa.R.A.P. 126(b) (we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

[6] A review of the certified record reveals that Appellant did not include this challenge against trial and direct appeal counsel in his *pro se* petition or his amended PCRA petition. **See** Appellant's *Pro Se* PCRA Petition, 10/18/21; **see also** Appellant's Amended PCRA Petition, 2/18/22, at ¶¶ 17-24. As stated above, however, Appellant's *pro se* Rule 1925(b) statement averred that PCRA counsel "was ineffective for not reviewing the claim that it was Fentanyl that killed [Decedent]." Appellant's *Pro Se* Rule 1925(b) Statement, 6/26/24, at ¶ 7. Thus, we will review the merits of Appellant's claim under **Bradley**.

Appellant avers that counsel was ineffective in failing to adequately demonstrate that the Decedent's demise was caused by another substance, namely, Fentanyl, during trial and on direct appeal and that PCRA counsel was ineffective in failing to address this issue during the PCRA proceedings. *Id.*

At the January 18, 2024 PCRA hearing, Appellant's trial counsel, Stephen Kulla, Esquire, testified regarding his trial strategy. Attorney Kulla stated:

> [T]he focus of [Appellant's] defense, at least to me, was that there [were] some other people who had the opportunity to and did, in fact, deliver drugs or that [Decedent] got drugs from other people as well as [Appellant] and[, as such, Decedent's death] could [not] be attributed just to [Appellant].
>
> I think that is what [Appellant's expert at trial, Lawrence Guzzardi, MD,] focused on as well.

N.T. Hearing, 1/18/24, at 34. Our review of the transcripts of Appellant's trial confirms Attorney Kulla's testimony. More specifically, at trial, Nadine Koenig, a technical specialist in toxicology, testified that, at the time of Decedent's death, the following drugs were in his system: Alprazolam (8ng/mL); Cocaine (104 ng/mL); Benzoylecgonine (846 nanograms); Oxycodone (50 ng/mL); Fentanyl (12.6 ng/mL); and, Acetyl Fentanyl (1.1 ng/mL). N.T. Trial, 10/1/19, at 25-27. In addition, the Franklin County Corner, Jeffrey Conner, testified that Decedent's ultimate cause of death was mixed drug toxicity. N.T. Trial, 9/30/19, at 171. Based upon the foregoing, Attorney Kulla questioned Ms. Koenig, as well as Michael Johnson, M.D., a medical and forensic pathologist, about whether they knew, definitively, when Decedent ingested the

- 12 -

aforementioned drugs and whether they knew, definitively, the ultimate cause of Decedent's demise. ***See id.*** at N.T. Trial, 10/1/19, at 42-49; ***see also id.*** at 80-90. Neither Ms. Koenig nor Dr. Johnson could offer an opinion on when Decedent ingested the aforementioned drugs, how Decedent ingested the aforementioned drugs, or whether Appellant "cause[d Decedent's] death." ***Id.*** at 49; ***see also id.*** at 90.

In addition, Attorney Kulla presented Dr. Guzzardi as an expert in medical forensic toxicology. Importantly, Dr. Guzzardi testified for the defense that, in his opinion, "neither Oxycodone nor Fentanyl nor Alprazolam by themselves or even in combination were sufficient to cause [Decedent's] death . . . in the circumstances of this matter." N.T Trial, 10/2/19, at 109. Instead, Dr. Guzzardi opined that "a cardiac event was the most likely cause of [Decedent's] death." ***Id.*** at 110. More specifically, Dr. Guzzardi stated:

> I can tell you to a reasonable degree of medical certainty that the most likely cause of [Decedent's] death was not directly from a drug overdose, it was from another event. I can also tell you that the most likely cause of that other event was myocardial problems. Either an arrhythmia or an undiagnosed myocardial infarction, but it was not from a direct effect of the drugs that he was administered.

***Id.*** at 113. Dr. Guzzardi based his opinion on, *inter alia*, the lack of drug paraphernalia found by Decedent's body as well as Decedent's "significant cardiac disease and . . . evidence of hypertension," and "prior [episodes] of myocardial infarction." ***Id.*** at 111. Based upon all of the foregoing, it is evident that, during trial, Attorney Kulla attempted to demonstrate that

Decedent's death was not caused by the Oxycodone and/or Cocaine provided by Appellant. As such, we conclude that Appellant's claim to the contrary is devoid of merit.

Based upon all of the foregoing, we affirm the PCRA court's order dismissing Appellant's PCRA petition.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/05/2025